701 P.2d 369

Sonny OTERO and Lorraine Otero, Plaintiffs-Appellees,

v.

James F. WHEELER, Defendant and Crossclaimant-Appellee,

v.

Jaleane D. WHEELER, Defendant and Cross-Defendant-Appellant.

Jaleane D. WHEELER, Plaintiff-Appellant,

James F. Wheeler, Involuntary-Plaintiff-Appellee,

v.

Sonny OTERO and Lorraine Otero, husband and wife, Jane A. Doe, John Doe and Doe & Doe partnership, a New Mexico General Partnership, Defendants-Appellees.

No. 15201.

Supreme Court of New Mexico.

June 12, 1985.

Randolph B. Felker, Felker & Ish, P.A., Santa Fe, for appellant Jaleane Wheeler.

David C. Davenport, Jr., Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for appellees Otero.

Robert Suzenski, P.C., Santa Fe, for appellee James Wheeler.

## OPINION

WALTERS, Justice.

We affirm the jury's verdicts in this action which arises from several real estate transactions entered into by appellees Sonny and Lorraine Otero, husband and wife, appellee James Wheeler, and his wife, appellant Jaleane Wheeler.

The Wheelers were licensed real estate brokers. Between 1976 and 1981, occasionally with others, they participated in more than 48 real estate transactions for investment or development, using community property funds for their purchases. For ease in handling these transactions, Jaleane executed two powers of attorney authorizing James to act as her agent in all real estate matters. At least one of the powers of attorney was in effect (perhaps both) at the time of signing the two contracts pertinent to this suit. It is undisputed that the Oteros knew of the powers of attorney.

In 1978, Sonny and James arranged to purchase five lots in Santa Fe for development and resale. Although both men were married at the time of this transaction, the real estate contract with the seller (Contract # 1) provided that Sonny and James would hold the property "as tenants in common, each taking an undivided one-half interest as their sole and separate property." (Plaintiff's Exhibit 2.)

In 1980, Sonny and James agreed to divide the parcels into ten lots, and they began to develop the property. All four Wheelers and Oteros executed a note for a development loan. In accordance with an agreement between Sonny and James that Wheelers would sell their interest in the ten lots to Oteros as each lot was ready for resale, the Wheelers transferred their interest to the Oteros and received immediate payment whenever a resale occurred.

In 1981, the resale agreement between Sonny and James was formalized (Contract # 2), but was not signed by Jaleane. James signed his own name, with no indication that he also signed as Jaleane's agent.

Between 1979 and 1981, seven of the ten lots were resold to third parties. Each time, Jaleane joined in executing the necessary documents of sale. Each time, payment from Oteros for the lots was deposited in a community property bank account of the Wheelers.

In the fall of 1981 James and Jaleane were engaged in divorce proceedings. At that time Jaleane revoked the two powers of attorney, and when it came time for the eighth lot to be sold, she refused to sign the required documents. The Oteros thereupon filed an interpleader action, seeking to compel Jaleane to join in transferring the property. Before the case was heard, there was a default in the underlying real estate contract (Contract # 1), and the three unsold lots were forfeited to the original owner, Duncan. Subsequently, the Oteros repurchased those lots for a price below market value, but for $10,000 more than the price originally agreed upon in Contract # 1.

When Jaleane learned of the repurchases, she filed a claim against the Oteros, alleging a constructive trust or, in the alternative, breach of contract and constructive fraud. The Oteros then counterclaimed against her for breach of contract and slander of title, and filed a third party action against James Wheeler for breach of contract. James responded with a breach of contract suit against Jaleane, and all claims were consolidated for trial.

At the close of the evidence, the trial court dismissed the interpleader action as moot, dismissed all of Jaleane's claims, and

issued a directed verdict in favor of the Oteros on their breach of contract claim against Jaleane. The jury entered a verdict in favor of the Oteros and against Jaleane in the amount of $25,000, and awarded James a total of $5,500 in damages against Jaleane on his breach of contract claim.

Jaleane's principal argument on appeal is that Contract # 2, wherein James agreed to convey the ten lots to Sonny as each was sold, was void for lack of spousal joinder. Jaleane points out that she was not a signatory to that contract, and her name did not appear in the document; James signed his own name, with no mention of the power of attorney he held for Jaleane.

■ According to the evidence, the Wheelers' interest in the realty under consideration was community property. It was acquired during their marriage and was paid for with community funds. It was, therefore, community property under the presumption of NMSA 1978, Section 40–3–12(A) (Repl.Pamp.1983). James made no attempt to rebut that presumption. In fact, James treated the properties as community holdings.

It is true that in order to convey community real property, the signatures of both the husband and wife are required. NMSA 1978, § 40–3–13(A) (Repl.Pamp.1983). The provision is not exclusive, however, since one spouse may sign for both "pursuant to a validly executed and recorded power of attorney." NMSA 1978, § 40–3–13(B) (Repl.Pamp.1983). James held such a power of attorney from Jaleane when the Otero-Wheeler contract was signed by him. But, according to Jaleane, James could only sign "pursuant" to the power of attorney if her interest in the property is to be recognized within the four corners of the contract.

■ Customarily, an agent signs his own name, with a notation that he is signing for his principal. *Luna v. Mohr*, 3 N.M. 63 (Gild.E.W.S. ed.) 1 P. 860 (1884). As we have stated, on both of the contracts concerning the realty in question here James signed only his own name, failing to note his agency for Jaleane. It is generally established law that when an agent signs his own name and fails to disclose the fact that he is acting for a principal, the agent alone is bound by the contract. *Ades v. Supreme Lodge Order of Ahepa*, 51 N.M. 164, 181 P.2d 161 (1947). *See also Bank of New Mexico v. Priestley*, 95 N.M. 569, 624 P.2d 511 (1981); *DeBaca, Inc. v. Montoya*, 91 N.M. 419, 575 P.2d 603 (1978). When the principal is disclosed, however, the principal is bound by the contract even though his name does not appear on the document.

A disclosed or partially disclosed principal is subject to liability upon an authorized contract in writing, if not negotiable or sealed, although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties.

*Restatement (Second) of Agency* § 149 (1958). Comment (b) following section 150 of the *Restatement (Second)*, explains:

(b) Under the rule stated in Section 149, the fact that the agent appears to be a party and that the principal's names does not appear in the integrated instrument is not sufficient to exclude the principal as a party.

■ Thus, the question is whether James's agency for Jaleane was disclosed to or known by Oteros. Sonny testified that he knew of the powers of attorney and was aware of the many real estate transactions in which James had acted for both himself and his wife, and which Jaleane had later ratified by participating in subsequent transfers of the same or portions of the same real estate. The evidence fully disclosed that, in order to finance the development of the lots in question, the parties borrowed $50,000 and Jaleane joined in signing the loan agreements. As each lot became ready for resale, the Wheelers conveyed their interest to the Oteros, and each time received from the Oteros a check for $6,000, plus interest. Jaleane's name appeared on the documents by which those lands were transferred. The checks, made

out to both James and Jaleane, were deposited in an account from which the Wheelers' community bills were paid. All of these actions now estop Jaleane from denying the validity of the Wheeler-Otero Contract # 2. *Grandi v. LeSage,* 74 N.M. 799, 399 P.2d 285 (1965).

"Ratification means to give validity to the act of another, and in legal phraseology usually means to approve or affirm by a principal what has been done by an agent." *Guadalupe County Board of Education v. O'Bannon,* 26 N.M. 606, 610, 195 P. 801, 803 (1921). Had James acted outside the authority granted him by Jaleane's power of attorney, Jaleane, on discovering any such contract, could promptly have repudiated James's act. Having failed to do so, and having accepted the benefits of Contract # 2, Jaleane is held to ratification and affirmation of her husband's act. *Grandi.*

Consequently, by breaching the agreement entered into by James on behalf of both of them, Jaleane exposed herself to liability in damages to the Oteros and to James. The trial court correctly submitted the issue of damages to the jury.

■ With regard to the amount of damages awarded to Oteros, Jaleane contends that the jury was called upon to speculate regarding amount, in violation of the rule that contract damages must be of a kind susceptible to proof and reasonable ascertainment. *Louis Lyster, General Contractor, Inc. v. Town of Las Vegas,* 75 N.M. 427, 405 P.2d 665 (1965); *Nichols v. Anderson,* 43 N.M. 296, 92 P.2d 781 (1939). Oteros alleged damage resulting from their inability to fulfill a contract for the construction of a house for Hugh Parry on one of the three remaining lots. Even though that contract contained other contingencies that were neither waived nor satisfied, there is no question that architectural fees, arranged financing, and use of the profits on the house and lot were lost to Oteros when Jaleane refused to execute a deed to the lot contracted for. In addition, the remaining three lots cost the Oteros $10,-000 more on repurchase than called for under Contract # 1.

■ The jury was instructed to consider sums lost by Oteros which might have been avoided by due care on their part, in accordance with the rule that all injured parties are bound to mitigate damages. *Pillsbury v. Blumenthal,* 58 N.M. 422, 272 P.2d 326 (1954); *Mitchell v. Jones,* 47 N.M. 169, 138 P.2d 522 (1943). The evidence supports both the compensatory and punitive damages awarded against Jaleane, and we will not disturb the jury's verdict.

■ It is likewise manifest that a verdict was correctly directed against Jaleane on her claims against the Oteros for constructive fraud, constructive trust and breach of contract. The trial court found no special duty owing from and no fiduciary relationship with the Oteros that would lead to either fraud against or a trust created for Jaleane by the Oteros' conduct. The evidence is not susceptible to any other determination with respect to Jaleane's claims against Oteros, *see Dotson v. Farmer's Inc.,* 74 N.M. 725, 398 P.2d 54 (1965), and those claims were properly withdrawn from the jury's deliberations.

■ Finally, Jaleane claims her motion to dismiss James's claim for breach of contract should have been granted because no contract between them existed. The conduct of the parties prior to Jaleane's refusal to join in the transfer of the eighth lot was a recognition by Jaleane of her obligations as a grantor when lots were sold, and her participation in the benefits of each sale prior thereto was evidence of a continuing acknowledgment of the validity of Contract # 2. Those were facts which the jury could consider as estopping her from denying her assent to Contract # 2 and its terms, and her obligations under that contract not only to the Oteros but to James, as well. *Treadwell v. Henderson,* 58 N.M. 230, 269 P.2d 1108 (1954). One may not partially perform when advantageous to do so, nor reap the benefits from written or unwritten contracts, and then assert absence of contract to avoid the penalties of refusing to complete performance. *Grandi.*

The verdict of the jury and the rulings of the trial court are affirmed in all respects.

IT IS SO ORDERED.

FEDERICI, C.J., and SOSA, Senior Justice, concur.