Terry Jo TYNES, John R. Brooke, III, Caroline B. Schindler, Ronita Miller, Equitable Trust Company, Gainey & Schweers and Carl G. Jockusch, Appellants/Appellees,

v.

Gary MAURO, Commissioner of the General Land Office of the State of Texas, Appellee/Appellant.

No. 08–91–00086–CV.

Court of Appeals of Texas, El Paso.

July 14, 1993.

Rehearing Overruled Aug. 11, 1993.

Mark P. Gainey, San Antonio, C.C. Small, Jr., Ed Small, Small, Craig & Werkenthin, Austin, for appellants/appellees.

Jose Manuel Rangel, Mary A. Keeney, Asst. Attys. Gen., Energy Div., Dan Morales, Atty. Gen., Austin, for appellee/appellant.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

LARSEN, Justice.

In this oil and gas case, arising from facts very similar to those addressed in the recent Texas Supreme Court case *State v. Durham*, 860 S.W.2d 63 (1993), the State of Texas sought reimbursement for its share of oil and gas royalties due under the Relinquishment Act of 1934, and under its own unleased ⅟₁₆th interest in the mineral estate. We believe that a 1934 trespass to try title suit did not preclude, as *res judicata*, the State's claims here, particularly where an earlier suit had adjudicated title to the ⅟₁₆th interest upon which the State's judgment is based. We also believe the trial court did not lose jurisdiction over non-settling royalty owners when certain others settled with the State, and that the trial court's refusal to assess joint and several liability against all non-settling royalty owners was not error. We therefore affirm the trial court's judgment.

## SURFACE OWNERS' DUTIES UNDER THE RELINQUISHMENT ACT

■ The State of Texas owns all mineral interests underlying permanent school fund lands; under the Relinquishment Act of 1934, a surface owner of those lands is the State's agent with the authority to negotiate and execute oil and gas leases. In return for this service, and as compensation for damages to the surface, the surface owner keeps one-half of the lease proceeds. Agents selling assets for owners, including surface owners under the Relinquishment Act, owe a fiduciary duty to the owners, and agents violate this duty by acquiring assets for their own benefit. *Durham*, 860 S.W.2d at 66; *Shannon v. Marmaduke*, 14 Tex. 218 (1855). The Relinquishment Act thus also prohibits surface owners from acquiring working interests in the permanent school fund minerals underlying their property. *Durham*, 860 S.W.2d at 66; *State v. Standard*, 414 S.W.2d 148, 152 (Tex.1967).

## FACTS

The facts in this case are worthy of an Edna Ferber novel, or at least a subplot on the *Dallas* television series (a flashback, in period costume). As will be seen in examining the relevant case law, transactions such as those described here were apparently as commonplace fifty years ago in the West Texas oil patch as they are confusing today.

On May 31, 1934, the State of Texas awarded surface ownership in a 24.41 acre tract of land[1] to John H. Tyler, reserving title to the mineral estate. This land lies in Pecos County, Texas, within the Yates Oil Field, the most prolific producer discovered in that era. Before the State awarded title, Tyler had conveyed an undivided ⅟₁₆th interest in the land to Frank M. West, and ¹⁵⁄₁₆th interest to M.H. Reed.[2] The day before title vested, Reed professed to lease the entire tract for oil and gas exploration to Fred Turner, Jr. Within three months, Turner assigned the lease, without consideration, to Pecos Producers, Inc., a corporation owned 79 percent by Reed. Reed, as president and majority owner of Pecos Producers, later carved a 75 percent overriding royalty interest from the lease, conveying that interest to himself and his family. On August 31, 1934, Frank West conveyed his ⅟₁₆th surface interest to Ralph R. Ogden, another Pecos Producers shareholder. The mineral interest in this ⅟₁₆th, however, was never leased.

In 1934, in a lawsuit entitled *Lucile Fields Maloney, et al. v. M.H. Reed, et al.*, ("*Maloney*") the earliest litigation concerning this land was brought in Pecos County. In that lawsuit against Reed and Turner, which included a trespass to try title ("TTT") action, the court held that Reed's lease to Turner did not include the ⅟₁₆th interest transferred to West, and that only West had the right, as surface owner, to lease that portion of the minerals for the State. The court removed all clouds on Turner's title to ¹⁵⁄₁₆th of the property, recognizing only ⅟₁₆th owned by

---

1. Designated Section 1, Scrap File 13476.

2. No party claims these anticipatory transfers were in any way invalid.

West. Judgment in this suit was entered July 26, 1934, prior to any other legal determination concerning the land. This judgment became final and remained unchallenged for fifty years.

Later in 1934, the State filed suit in Travis County, alleging that when Reed leased the tract to Fred Turner, Turner paid an artificially low bonus for it, and that any lease located in the prolific Yates Oil Field had a much higher value. This lawsuit also included a trespass to try title claim. The State received judgment for one-half of $10,000 as additional bonus. The trial court held that M.H. Reed possessed title to the tract surface, subject to the State's reservation of minerals, and that Pecos Producers possessed a valid oil and gas lease executed by Reed. This judgment also remained unchallenged for fifty years, with the State accepting its royalty interest payments from the lease throughout that time.

In 1941, Pecos Producers assigned its lease to Iraan Producers, reserving to itself a 5/8th overriding royalty. Following this transfer, the revenue from oil on the tract was paid out in these proportions: 5/8th overriding royalty to Pecos Producers; 1/8th royalty shared by M.H. Reed and the State, pursuant to the Relinquishment Act; and 1/8th interest to Iraan, that interest bearing all costs of production. There are two groups of royalty owners appealing this action: the Equitable group, which purchased the 5/8th override in 1975;[3] and the Tynes group, whose members succeeded to the 1/8th shared royalty by inheritance.[4]

In January 1983, Iraan merged with Summit Energy, Inc. Summit ultimately found its lease unprofitable, as its 1/8th working interest could no longer bear the costs of production. It then brought suit against the owners of the 5/8th override and the surface owners sharing the 1/8th royalty with the State, claiming breach of fiduciary obligation, *quantum meruit* and breach of warranty. The State intervened in the suit, claiming it had not received the benefits due it under the lease from which the 5/8th override derived. The State also alleged that because West had owned a 1/16th interest in the tract at the time it was leased to Turner, that 1/16th was unleased and the money earned from its production belonged to the State. It is this lawsuit which is presently before us on appeal.

### TRIAL COURT RULINGS

In December 1986, the trial court heard upwards of fourteen motions for summary judgment filed by the various parties to this lawsuit. It denied all motions except one filed by the State, holding that 1/16th of the 24.41 acre tract (that portion of the surface estate originally deeded to Frank M. West, the subject of the *Maloney* suit which was later transferred to Pecos Producers) was never leased. Thus, the trial court found the State was entitled to reimbursement for 1/16th of the total income from mineral production on the land.

In August 1989, the trial court dismissed with prejudice certain defendant royalty owners who had settled their portions of this controversy with the State of Texas.

In September 1990, a jury returned its verdict after trial on the merits finding that neither Pecos Producers nor M.H. Reed had acquired additional benefits under the oil and gas lease of this tract, that certain sums of money for oil and gas production had been received by some non-settling defendants (the Tynes group), and that no money had been received by others (the Equitable group). The trial court entered judgment on the verdict except as to the Equitable group, whose members it found had received money from oil and gas production. It decreed that the State was due the 1/16th interest found in its summary judgment, but did not assess joint and several liability against any royalty owner. It instead ordered that each defendant pay only a *pro-rata* share of the judgment, and that in the future, all payments be recalculated so that 1/16th of production proceeds would be paid to the State, in addition to the State's shared royalty under the Relinquishment Act. The Tynes group, Equitable

---

3. The Equitable group thus is the only defendant raising a *bona fide* purchaser defense.

4. The settling royalty owners also inherited fractions of the 1/8th shared royalty interest.

group and State of Texas all appeal various aspects of this judgment.

### RES JUDICATA EFFECT OF 1934 JUDGMENTS

The Tynes group's Points of Error One, Two and Three and Equitable group's Point of Error Two claim that the trial court erred in refusing to grant summary judgment based upon the State's 1934 trespass to try title suit concerning this land. There, they argue, the trial court decreed that Reed held fee simple title to the entire surface estate, as against the State, and that Pecos Producers had a valid oil and gas lease. In its TTT suit, the State never raised any issue on the outstanding ⅟₁₆th interest transferred to West. Defendant royalty owners argue that final TTT judgments are:

> A final judgment that establishes title or right to possession in an action to recover real property is conclusive against the party from whom the property is recovered and against a person claiming the property through that party by a title that arises after the action is initiated. Tex.Rev.Civ. Stat.Ann. § 22.003 (Vernon 1984).

Thus, they claim that the 1934 TTT judgment must have established the title and rights of Reed, Pecos Producers, and the State, and all persons claiming an interest through them, and this entire lawsuit should have been disposed of on the theory of res judicata. This is a persuasive argument, but it ignores one fact that we find dispositive: the earlier *Maloney* suit in Pecos County quieted title to an undivided ⅟₁₆th of the tract in Frank M. West, and specifically found that only he was empowered to lease those mineral rights on behalf of the State. That judgment decreed:

> That the defendant, *Frank M. West, recover of defendant, John H. Tyler, an undivided ⅟₁₆th of the land situated in Pecos County, Texas, awarded and patented to John H. Tyler as section 1, SF 13476,* in the name of John H. Tyler, being the land described in patent from the state of Texas to John H. Tyler, recorded in Vol. 5, page 373, and all rights incident to and vested in the patentee and in connection with said patent and award; and also an undivid-

ed ⅟₁₆th of all rights acquired by John H. Tyler under and by virtue of letters of inquiry Nos. 96 and 253 as described in the cross action of the defendant, John H. Tyler, and the mandamus suits styled John H. Tyler vs. A.N. Lea, being numbers 1941 and 1965 in the 83rd District Court of Pecos County, Texas, which suits were filed in connection with the above mentioned letters of inquiry; this recovery shall be without prejudice to the obligation of Frank M. West to pay John H. Tyler $500.00 out of the proceeds of oil produced and sold from such lands or any part thereof. [Emphasis added].

Thus, the issue of Frank West's ⅟₁₆th interest, transferred by Tyler, was determined in the *Maloney* suit, not the later *State v. Pecos Producers* where it was never raised. Although the judgment in *Pecos* did confirm Reed's title and Pecos Producer's lease, it does not recite that the lease covers the *entire* mineral estate. Its language is:

> The fee simple title to the surface estate is vested as against all parties hereto in M.H. Reed, subject to the reservation of the mineral in and under the same....

> Pecos Producers, Inc., has a valid and subsisting oil and gas lease executed by M.H. Reed, individually and as agent of the State of Texas, lessor....

Thus, the issue of whether the Pecos lease was for the entire mineral estate, or only ¹⁵⁄₁₆th, was not necessarily determined in *Pecos.*

We construe judgments, like other written instruments, as a whole toward the end of harmonizing and giving effect to all the court has written. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex. 1987); *Constance v. Constance,* 544 S.W.2d 659, 660 (Tex.1976). If possible, we construe a judgment so as to render it serviceable instead of useless. *Smith v. Smith,* 247 S.W.2d 426, 428 (Tex.Civ.App.—Texarkana 1952, writ ref'd n.r.e.). These rules of construction apply where ongoing litigation requires construction of prior judgments. *See Wyman v. Harris,* 222 S.W.2d 297, 305–6 (Tex.Civ.App.—Beaumont 1949, writ ref'd n.r.e.). We think these rules apply just as much where, as here, we must construe two

potentially conflicting judgments, both final, and both entered by courts of competent jurisdiction. We should, if possible, reconcile any apparent conflicts in the *Maloney* and *Pecos Producers* judgments so as to give effect to both, rendering both functional decisions of the courts. We therefore hold that the *Maloney* judgment conclusively determined that West possessed a $\frac{1}{16}$th interest in the property at issue here. We further hold that the *Pecos Producers* decision did not invalidate that earlier decision, as it adjudicated only those rights held under the $\frac{15}{16}$th interest originally deeded by Tyler to Reed. The trial court's summary judgment holding that $\frac{1}{16}$th of the mineral interest had never been leased was therefore correct, as was its denial of the royalty owner's motion for summary judgment urging that the *Pecos Producers* case mandated a dismissal of the State's cause of action.

### STATE v. DURHAM

Because the Texas Supreme Court has recently issued an opinion in a case remarkably similar to this one, and because we feel that case, while not on all fours, is persuasive authority and lends us guidance in our decision here, we feel compelled to discuss it in detail.

*State v. Durham*, 860 S.W.2d 63 (1993), like this case, involved a tract of Relinquishment Act land in Pecos County, in the same Yates Oil Field. The General Land Office awarded 101.35 acres to Bob Reid on March 5, 1930, who the same day, conveyed 3.97 acres of it to Fred Turner, Jr. (Mr. Turner was apparently a busy man.) In May, 1933, Reid leased the entire 101.35 acres, including the 3.97 acres, to M.D. Bryant. In November 1933, the State filed a TTT suit against Reid, Bryant, Turner and others claiming an interest in the land and seeking appointment of a receiver because of alleged drainage from oil and gas wells on adjoining tracts (perhaps even the one at issue here, who knows?). In March 1934, Turner executed an oil and gas lease to A. Fasken, who intervened in the TTT suit asserting his lease interest in the property. The trial court eventually entered judgment giving Turner fee simple title to 3.97 acres, subject to the State's mineral interest. It also confirmed Fasken's lease, the east half of which he transferred to M.D. Bryant the day judgment was entered, Fasken reserving a $\frac{3}{16}$th overriding royalty interest. In April 1934, Turner, Fasken and others formed Midland Producing Company to drill the western half of the lease. Turner and Fasken transferred their mineral interests in the land to Midland. Later, Fasken conveyed his remaining interests to Turner. Midland drilled two very productive wells on the land. The State eventually brought suit alleging that the Turner–Fasken lease was a sham intended to defraud the State of its share of royalties due under the Relinquishment Act. Defendants requested summary judgment, claiming that the State's new litigation was an impermissible collateral attack on the 1934 TTT judgment. The Austin Court of Appeals affirmed, but the Supreme Court disagreed, holding:

> [T]he respondents argue that the present suit by the State represents an impermissible collateral attack on the 1934 judgment. The State has not sought to set aside the judgment; it has alleged fraud extrinsic to the judgment, and invokes the equity powers of the court to impose a constructive trust. Consequently, the State's claim is not a collateral attack. For example, in *Dilbeck v. Blackwell*, 126 S.W.2d 760 (Tex. Civ.App.—Texarkana 1939, writ ref'd), heirs of a decedent brought suit alleging that the executor committed fraud by obtaining probate court approval of a sale to third parties, who in fact were purchasing it on behalf of the executor. The court held that the remedy of constructive trust 'is authorized as relief against extraneous fraud and is not in conflict with the rule against collateral attack upon the orders of the probate court involved.' *Id.* at 761; *see generally* Hodges, *Collateral Attacks on Judgments*, 41 Tex.L.J. 164, 187 (1962).

The *Durham* majority goes on to observe that, although the questioned lease had been executed sixty years before, the State in its sovereign capacity is not subject to the defenses of limitations, laches or estoppel which

govern ordinary litigants. *Durham,* 860 S.W.2d at 67. It remarks:

> We are sympathetic to the plight of the respondents but if we were to accept the res judicata views of the dissenting opinions, all a perpetrator of fraud needs to do is keep the scheme concealed until the trial court signs a judgment in a related matter, then declare that he and his successors in interest are home free. *Id.*

The Court distinguishes its recent opinion in *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627 (Tex.1992), upon which the royalty owners here relied heavily, which states that *res judicata* bars a later suit involving the same subject matter "which through the exercise of diligence, could have been litigated in a prior suit." *Barr,* 837 S.W.2d at 631. *Durham* holds, however, that "the trial court rendering the 1934 judgment did not and could not have adjudicated the issue of an undisclosed plan to acquire an improper interest. Thus, the judgment that the lease was 'valid and subsisting' did not inoculate it against the alleged fraud the trial court did not adjudicate, indeed had no way of knowing about." *Durham,* 860 S.W.2d at 67. We find that although *Durham* is not precisely on point here, it nevertheless guides our decision. *Durham* seems to stand for the notion that blind allegiance to *res judicata* principles is not necessarily the correct course in cases of this sort. Defendant royalty owners argue that, because in this case, a jury rejected the State's sham transaction and constructive trust theories of recovery, *Durham's* reasoning will not support the State's recovery based upon the unleased interest in 1/16th of the minerals in the tract. We disagree. We believe *Durham* supports our conclusion that the 1934 Pecos County judgment, acknowledging West's 1/16th interest in the tract, was properly considered by the trial court in awarding summary judgment. We find, moreover, that *Durham* requires we reject the Equitable group's assertion that it should have been allowed to introduce in evidence the *Pecos Producers'* judgment, in its effort to show that the State's estoppel from raising a claim to the 1/16th unleased interest, because it had accepted with notice, the outcome of *Pecos*

*Producers* for fifty years. Under *Durham,* the State is clearly not subject to estoppel theories which bind ordinary citizens.

We overrule the Tynes group's Points of Error One, Two and Three. We also overrule the Equitable Trust group's Point of Error Two.

### DISMISSAL OF SETTLING DEFENDANTS

■ The Equitable group's Point of Error One urges that the trial court lost jurisdiction by dismissing the State's claims against some of the defendants pursuant to a settlement agreement with the State, but in allowing the case to proceed against others, including the Equitable group. Equitable group claims that Tex.R.Civ.P. 39(a) requires this Court to reverse the judgment and order dismissal for lack of jurisdiction. We find that Rule 39(a) did not deprive the trial court of jurisdiction here, and that there was no error in dismissing the settling defendants with prejudice.

■ Tex.R.Civ.P. 39(a) requires that persons be joined in a lawsuit in two instances: (1) where in their absence complete relief cannot be accorded those already parties; and (2) where they claim an interest in the subject matter at issue and their absence will impair their ability to protect that interest, or leave parties to the suit at risk of incurring multiple or inconsistent obligations. We cannot see that either of those situations apply here. The State, not the Equitable group, is the party seeking relief, so the first category clearly did not require the settling parties to remain in the suit. And although all parties, including the settling defendants, claimed an interest in the subject matter at hand, this is not a situation where the settlement of some defendants impeded the ability of others to defend their interest in oil and gas royalties, nor put others at risk of incurring multiple obligations. The State came to a complete and final agreement with the settling defendants; it dismissed its case against them with prejudice, and we cannot see how this could impede anyone's ability to protect claimed interests in the oil and gas proceeds here. Finally, as no joint and several liability was assessed against *any* royal-

ty owner, settling or non-settling, we cannot see how the Equitable group, or any other defendant, can complain of the risk of multiple or inconsistent liabilities. Thus, we find initially that none of the enumerated reasons for requiring joinder under Tex.R.Civ.P. 39(a) is present here.

Second, we do not believe that this is a situation where Rule 39(a) applies in any event. Certain royalty owners who had been served with process, who had answered in the lawsuit, and subject to the court's ruling that 1/16th of the mineral interest remained unleased, chose to settle with the State after the summary judgment was entered. The State's right to 1/16th interest had been adjudicated before any settlement or dismissal. This decision on the 1/16th remained intact throughout the remainder of the litigation, and indeed is the sole basis for the State's judgment on appeal now. The settling defendants *were* parties to the action, they *were* subject to the trial court's ruling which ultimately disposed of the State's claims, and they settled with the State accordingly. Their claims and defenses were before the trial court when they decided to buy their peace. This is simply not a Rule 39(a) situation.

Finally, we note that the modern Tex. R.Civ.P. 39(a) is not a rule intended to deprive the trial court of jurisdiction over parties before it in any but the most unusual circumstance. The Supreme Court has noted:

> Under our present rule '[i]t would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined.' *Cox v. Johnson*, 638 S.W.2d

867, 868 (Tex.1982), quoting *Cooper v. Texas Gulf Industries Inc.*, 513 S.W.2d 200, 203 (Tex.1974).

We do not find that the dismissal of settling defendants here created that rare situation where the court lost jurisdiction to adjudicate the rights of the State and the remaining defendants, particularly because the settling defendants were fully subject to the same ruling on liability that was ultimately adjudged against the non-settling defendants. The Equitable group's Point of Error One is overruled.

### JOINT AND SEVERAL LIABILITY

■ The State, as appellant, in its sole point of error urges the trial court should have assessed joint and several liability against the non-settling royalty owners. The State claims that defendants trespassed and converted the 1/16 interest owned by the State, thus incurring joint and several tort liability for the State's unpaid percentage of royalties.[5] By cross-point, the royalty owners argue that because of the 1934 *Pecos Producers* TTT judgment, the Turner lease covered all the State's interest in the 24.41 acres, and that therefore the court erred in assessing *any* liability against the royalty-owning defendants. We overrule both points.

We find no support for the State's argument in any finding by the jury or the trial court: nowhere were defendant royalty owners, or their predecessors, held to be trespassers on the State's land or converters of the State's interest in oil and gas proceeds. Indeed, the jury's answers to questions number one and three, which would have supported judgment for trespass and conversion, were answered negatively by the jury.[6] The

---

**5.** In the midst of trial, the State withdrew its claim for joint and several liability against the defendants as to the 15/16th lease interest the State sought under the Relinquishment Act, and to which the jury ultimately found it unentitled. We surmise that the patent inequity which would have resulted to holders of small percentages of that royalty interest led the State to abandon that claim.

**6.** Those questions read:

> *QUESTION NO. 1:*

Did Reed, directly or through Pecos Producers, Inc., acquire additional benefit from the lease?

ANSWER "YES" OR "NO": __no__

IN ANSWERING THIS QUESTION, YOU ARE INSTRUCTED THAT:

"ADDITIONAL BENEFITS" means benefits not shared equally with the State.

*QUESTION NO. 3:*

When Reed executed the lease to Turner, did Reed plan to acquire additional benefits from the lease?

ANSWER "YES" OR "NO": __no__

State's sole basis for recovery in this suit was the trial court's summary judgment declaring that 1/16th of the 24.41 acre tract of land had at all times remained unleased.

Moreover, it has long been the rule in Texas that cotenants have the right to extract minerals from common property without first obtaining the consent of other tenants. Each cotenant has a right to enter upon the common estate and a corollary right to possession. *Byrom v. Pendley,* 717 S.W.2d 602, 605 (Tex.1986). The extracting tenant must only account for the value of minerals taken, less reasonable costs of production. *Id.* That is the situation which is presented in this case, and that is exactly the remedy the court ordered here. We hold there was no error in refusing to assess joint and several liability against the royalty owners. Although it may not be of strictly legal consequence, we also note that the royalty owners here are far removed from whatever tortious dealings might have occurred on the Yates field long ago; the equities certainly do not demand imposition of joint and several liability here. The State's point of error is overruled.

The defendant royalty owner's claim, on the other hand, is based upon their argument that *res judicata* principles precluded the State from any recovery after the court entered the *Pecos Producers* trespass to try title judgment. We have discussed this argument, and have rejected it. The defendants' cross-point is overruled.

### CONCLUSION

The 1934 *Pecos Producers* suit did not preclude the action brought by the State here, and the *Maloney* suit established the existence of a 1/16th interest in the tract which remained unleased. The trial court did not err in granting the State's motion for summary judgment on that point, in denying defendants' motion for summary judgment based upon *res judicata* or in excluding evidence of the *Pecos Producers* judgment at trial. Further, the trial court did not lose jurisdiction after dismissing the settling defendants with prejudice, or in refusing to assess joint and several liability for reimbursing the State's 1/16th share of the total

mineral lease proceeds. The judgment of the trial court is affirmed.