Doyle **HARTMAN,** Appellant,

v.

**SIRGO OPERATING, INC.** and **Sirgo Brothers, Inc.,** Appellees.

No. 08–93–00030–CV.

Court of Appeals of Texas, El Paso.

Oct. 6, 1993.

Rehearing Overruled Nov. 3, 1993.

---

be exchanged for the interest owned by Hartman. Sirgo and ARCO entered into an agreement in April 1991 for the exchange of properties. That agreement was mutually rescinded by the parties on May 14, 1991. Sirgo then filed this suit for a declaratory judgment to determine the rights of the parties under the November 1990 letter agreement. Hartman then filed suit in New Mexico seeking specific performance of the various contracts. That suit was dismissed following the entry of the judgment in this case.

Steven C. James, Beck & James, P.C., El Paso, J.E. Gallegos, Gallegos Law Firm, P.C., Santa Fe, NM, for appellant.

Michael Short, Vann Culp, Shelby J. Bush, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, for appellees.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

### OPINION

OSBORN, Chief Justice.

This appeal is from a judgment entered in a declaratory judgment suit concerning the validity of a contract for the sale and exchange of certain oil and gas properties in New Mexico. The trial court declared the contract void under the New Mexico Joinder Statute because the wife had not signed the contract. Attorney's fees were awarded to the Appellees. We affirm.

### Facts

Sirgo Brothers, Inc. and Sirgo Operating, Inc. (Sirgo) began negotiating with Doyle Hartman in 1990 for the purchase of his interest in the Myers Langlie–Mattix Unit, an oil producing waterflood project in Lea County, New Mexico. Hartman's interest in the Unit was the community property of him and his wife, Margaret. Negotiations were conducted for Hartman by his landman, Bryan Jones. Jones and Sirgo signed a letter agreement in November 1990 which required Sirgo to obtain certain interest owned by Atlantic Richfield (ARCO) which was to

### Jurisdiction of Texas Court

Hartman initially asserts that the trial court erred in denying his plea to the jurisdiction. He contends the suit for a declaratory judgment is one affecting title to real property in New Mexico and also that the suit failed to join Margaret Hartman and ARCO who had an interest affected by the suit. Certainly, Texas courts are without power or jurisdiction to adjudicate title to land located in another state. *Holt v. Guerguin*, 106 Tex. 185, 163 S.W. 10 (1914); *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458 (Tex.Civ.App.—Texarkana 1951, writ ref'd). But Texas courts may enforce an *in personam* obligation by ordering a party to convey land located in another state. *McElreath v. McElreath*, 162 Tex. 190, 345 S.W.2d 722 (1961); *Brock v. Brock*, 586 S.W.2d 927 (Tex. Civ.App.—El Paso 1979, no writ). The distinguishing factor between these two principles is whether the cause before the Court involves a naked question of title. *Massie v. Watts*, 10 U.S. (6 Cranch) 148, 3 L.Ed 181 (1810).

In this case, Sirgo sought a determination of the parties' rights and legal obligations under the letter agreement executed in November 1990. That agreement provided for the exchange of Hartman's interest in the waterflood unit for certain property to be acquired by Sirgo from ARCO. The exchange was conditioned upon Sirgo's acquisition of certain interest from ARCO. The trial court was not required to determine ownership of land in New Mexico nor was any relief sought requiring the transfer of title to land in New Mexico. The declaratory

judgment suit was only seeking to determine obligations under a contract, which contract did involve an obligation to exchange land in New Mexico. Unlike the suit in *Carmichael v. Delta Drilling Co.*, this suit was not filed seeking specific performance of the parties' agreement. And unlike *Miller v. Miller*, 715 S.W.2d 786 (Tex.App.—Austin 1986, writ ref'd n.r.e.), this suit did not seek to determine ownership of mineral rights located in another state. The trial court had jurisdiction to determine if certain conditions precedent had been met and if the contract was valid and if the parties' obligations were valid and enforceable.

 The failure to join parties, even those necessary and indispensable, is not jurisdictional. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974); *Tynes v. Mauro*, 860 S.W.2d 168 (Tex.App.—El Paso 1993, n.w.h.). In Texas, fundamental error is a discredited doctrine. *Cox v. Johnson*, 638 S.W.2d 867 (Tex.1982). Since Sirgo sought a determination of its rights and obligations under the contract and not specific performance of any obligation involving the title to land, neither Margaret Hartman nor ARCO were necessary parties.

 Hartman also claims that the trial court erred in denying his plea in abatement and that under principles of comity, the suit which he filed in New Mexico was the proper forum for determination of the rights of these parties. He also argues that Texas courts have disapproved the tactic of preemptively filing for declaration of nonliability. That has been the holding in tort cases. *Abor v. Black*, 695 S.W.2d 564 (Tex. 1985); *Texas Electric Utilities Company v. Rocha*, 762 S.W.2d 275 (Tex.App.—El Paso 1988, writ denied). That rule has evolved from the Court's recognition that only a plaintiff may seek redress for a tort. But in a contract case, either party may breach the agreement and either party may sue for a breach or a judicial determination of rights under the contract.

 Texas has recognized that where two cases are filed involving the same parties and the same issues, the court where the first case is filed shall retain jurisdiction to decide the issues and the second case should be abated. *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex.1974); *Texas Employers' Insurance Association v. Alvarez*, 656 S.W.2d 215 (Tex. App.—El Paso 1983, no writ); *State v. T.C. Bateson Construction Company*, 562 S.W.2d 538 (Tex.Civ.App.—El Paso 1978, no writ). We find no error in the Texas court proceeding to judgment prior to any decision by the New Mexico court. Points of Error Nos. Two and Three are overruled.

### Summary Judgment

Having concluded that the Texas court had jurisdiction to decide the issues presented, the controlling question is whether the court erred in granting summary judgment.

### Standard of Review

The movant has the burden of showing that there is no genuine issue of a material fact and that it is entitled to a judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546 (Tex.1985). In deciding that issue, all evidence favorable to the nonmovant will be taken as true and every reasonable inference must be indulged in favor of the nonmovant and all doubts resolved in its favor. *Id.; A.C. Collins Ford, Inc. v. Ford Motor Co.*, 807 S.W.2d 755 (Tex. App.—El Paso 1990, writ denied).

### Analysis

 Sirgo's motion was based upon the contention that Margaret Hartman did not join in the Sirgo–Hartman contract and since it involved community property, the contract was void under the New Mexico Joinder Statute. New Mexico Community Property Act of 1973, Section 40-3-13(A) provides:

Any transfer, conveyance, mortgage or lease or contract to transfer, convey, mortgage or lease any interest in the community real property ... attempted to be made by either spouse alone in violation of the provisions of this section shall be void and of no effect....

In construing this statute, the Supreme Court of New Mexico said:

Our decisions since the passage of the Community Property Act of 1973 have con-

tinued to follow our earlier precedents and have found all contracts to convey community real property not joined by both spouses 'void and of no effect,' absent a validly executed and recorded power of attorney.

*English v. Sanchez,* 110 N.M. 343, 347, 796 P.2d 236, 240 (1990).

The full extent of that Court's holding is best illustrated by the language of Justice Montgomery in his specially concurring opinion where he wrote:

In this state, then, a contract, conveyance or mortgage of community property without one spouse's joinder is void, void, void—no matter who raises the issue and no matter what the consequence on other parties' rights.

*Id.* at 244.

■ In our case, the contract was signed as follows:

> DOYLE HARTMAN
> /s/ Bryan Jones
> Bryan E. Jones
> Landman

AGREED TO AND ACCEPTED this 20th day of December, 1990.

SIRGO OPERATING, INC.

By: /s/ M.A. Sirgo II

President

Hartman contends that "Doyle Hartman" is the name of the operating company owned by him and his wife and that Bryan E. Jones as their agent signed for both spouses when he executed the agreement for the company. Accepting that contention as true in this summary judgment case, Jones could not bind the community assets in the absence of a valid power of attorney. N.M.STAT.ANN. § 40–3–13(B) (1978). In this case, there was no contention in the trial court that there was a valid power of attorney signed by either Mr. or Mrs. Hartman. Under the holding in *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979), the movant is not required to negate all possible issues of law and fact that could be raised by the nonmovant in the trial court but were not. "[T]he non-movant must now, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal." *Id.* at 679.

Hartman also argues that this contract was not one covered by the New Mexico Joinder Statute because it was not an attempt by one spouse to contract for or convey the community property but that the contract was by an agent and thus the statute does not apply. The argument urges that a person can do indirectly that which cannot be done directly under the statute. The contract was made by "Doyle Hartman." It is his name that is on the contract. To contend that he was not contracting to convey property is unrealistic.

■ Hartman also contends that prior to the filing of this suit, he and his wife had executed all of the instruments necessary to fulfill the terms of the contract and that such action on their part constituted a ratification and cured an error which existed when the contract was made. Unfortunately, the New Mexico legislature did not amend the joinder statute to provide for ratification until June 1993, long after this contract was signed. In this connection, we note that in *English v. Sanchez,* the Court said:

We ... have rejected the claim that a defective conveyance might be cured by the ratification by the nonjoining spouse.

*English,* 796 P.2d at 240.

Points of Error Nos. One, Four, Five, Six, and Seven are overruled.

■ Finally, Hartman urges the trial court abused its discretion in awarding attorney's fees to Sirgo. Such fees are permitted under the Uniform Declaratory Judgments Act. TEX.CIV.PRAC. & REM.CODE ANN. § 37.-009 (Vernon 1986). The decision to award such fees is within the discretion of the trial court and its judgment will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). Hartman objected to the evidence as to attorney's fees on the basis that the reply to interrogatories served upon Sirgo in the New Mexico suit never identified Michael Short who testified

in the Texas case as an expert witness. Neither the interrogatories nor the reply in the New Mexico case were controlling upon the trial of this case in a Texas court. We have reviewed the other arguments made about the award of attorney's fees and they fail to show an abuse of discretion. Point of Error No. Eight is overruled.

The judgment of the trial court is affirmed.

KOEHLER, Justice, concurring.

I write this concurrence only because I take exception to the dissenting justice's statement that the majority opinion is unfair, illogical, lacking in common sense, and at odds with the intention of the New Mexico Legislature. The majority is following the law as it is, or in this case as it was, not what we would like it to be or what one person perceives to be the "more sensible" approach. Although we in the judicial profession always hope that the results we reach as we apply the law to various fact situations will be fair, logical, and sensible, we recognize that this is not always the case. In any given case, however, what one interested person perceives to be fair, logical, and sensible, may not seem that way to another interested person.

In the instant case, the facts are clear that the real property involved was community property at the time the contract was entered into in 1990 and that Jones signed the contract as husband's agent only. Under the only reasonable reading of Section 40-3-13(A) of the New Mexico Statutes as it read in 1990, an attempted contract to convey community property not joined in by one of the spouses was void. By any logical syllo-gism, the conclusion must be that the contract in this case was void. Moreover, while the legislative intent behind the statute in question was to protect a spouse's interest in community property, it is possible that it was also intended and just as sensible to conclude that a buyer should be protected from unscrupulous sellers of community property who conveniently fail to inform the buyer of the property's community status and to have both spouses join until they can determine whether they want to go ahead with the deal.[1]

It is also an established fact that the amendment to Section 40-3-13(A) of the New Mexico Statutes allowing for ratification by the nonsigning spouse was not adopted by the New Mexico Legislature until 1993. The New Mexico Constitution, Article II, Section 19, provides that "[n]o ... law impairing the obligation of contracts shall be enacted by the legislature." To give the ratification amendment (which makes a substantive change in the law) a retroactive effect, as advocated by the dissent, would in this writer's opinion, be unconstitutional.[2]

LARSEN, Justice, dissenting.

I dissent. The majority's holding in this case is clearly at odds with the purpose for which the New Mexico Legislature passed the Joinder Statute, not to mention contrary to fairness, logic, and common sense. The purpose of the New Mexico Joinder statute is to encourage—nay, force—spouses to consult and agree on transactions involving their community estate. *See English v. Sanchez*, 110 N.M. 343, 347, 796 P.2d 236, 239 (1990).[1] Its purpose is certainly *not* to provide

---

**1.** One might well wonder in this case why any astute business man who owned oil properties in New Mexico would fail to have his wife join in a contract to convey community real property unless he wished to keep his options open.

**2.** The dissent inappropriately cites *Otero v. Wheeler*, 102 N.M. 770, 701 P.2d 369 (1985) as a case upholding a void contract, not signed by the wife, on the ground that she later ratified it. In that case, the husband had in his possession his wife's validly executed power of attorney but failed to sign the contract as agent for his wife. The buyer knew of the wife's power of attorney and the wife, although she knew of the transaction at the time and accepted benefits from it, later attempted to repudiate it. Because husband had her power of attorney and merely failed to indicate his dual capacity in signing the contract, the contract was not considered void. In our case, there is no claim that either Hartman or Jones had a validly executed and recorded power of attorney from Margaret Hartman.

---

**1.** In *English v. Sanchez*, the Court avoided harsh application of the Joinder Statute. The language upon which the majority relies here, therefore, is mere *dicta*. If the New Mexico Supreme Court took pains to avoid an unfair result stemming from some regrettable legislative phrasing, why should we not follow its lead?

strangers to the marriage a loophole for avoiding contractual obligations the stranger no longer deems profitable.[2] Nevertheless, that is the outcome which the majority here allows.

I believe that Justice Montgomery's position in *English v. Sanchez* best delineates the test this Court should use in determining whether a contract may be avoided by one who would otherwise be legally bound by it:

> [T]he question whether a contract is void or not must be determined with reference to the identity of the party asserting its invalidity and in light of the purpose of the statute or other legal pronouncement declaring it to be void. A party who is a stranger to the marital relationship lacks standing to assert the invalidity of the contract, because the purpose of the statute declaring it 'void and of no effect' is to protect the assets for the benefit of the community, not to provide a weapon for invalidation of an otherwise perfectly lawful transaction. *English v. Sanchez*, 796 P.2d at 242.

This approach is much more sensible than the one adopted by the majority here. I find additional support for the conclusion that a third party should not escape contractual obligations to a married couple, or one party to it, in the New Mexico Legislature's actions following *English v. Sanchez*. It amended the joinder statute in 1993 to allow written ratification by the nonjoining spouse.[3] The majority tacitly assumes this amendment was not retroactive in effect, but gives no reasons for its conclusion.

Here, the Hartmans submitted evidence in response to summary judgment which created a fact question as to whether Bryan Jones signed the contract as dual agent for Doyle and Margaret Hartman. A reasonable fact finder could easily find the landman represented Margaret Hartman's community interest in "Doyle Hartman Oil Operator" just

as he did Doyle Hartman's interest. There is no evidence, moreover, that Margaret Hartman did anything but heartily endorse this transaction, as shown by her ratification of Jones's authority to act on her behalf.[4]

An appellate court should avoid interpreting the law so it produces legal consequences which parties did not intend, unless some greater underlying purpose is served by applying the law in that way. An absurd outcome may be a necessary evil occasionally, but such a case should involve some underlying reason that compels us to ignore the parties' intentions. Here, I discern no underlying principle that is served by casting aside the parties' clear intentions. The New Mexico Legislature created its modern joinder statute to answer the mandates of the New Mexico Equal Rights Amendment. The statute provides married men and women equal rights over their community estate, a noble purpose. I do not condone the statute's perversion into a device for reneging on lawful agreements. I would reverse the trial court's summary judgment and remand the case for trial on the merits.

---

**2.** Along with Justice Montgomery, I think here Dickens' Mr. Bumble was right: "If the law supposes that, ... the law is a ass—a idiot."

**3.** The legislature added this sentence: "Nothing in this section shall affect the right of a spouse not joined in a transfer, conveyance, mortgage, lease or contract to validate an instrument at any time by a ratification in writing." N.M.STAT.ANN. § 40–3–13(B) (1978).

**4.** I note that the New Mexico Supreme Court held a later ratification sufficient to uphold a "void" contract where it is the nonjoining wife who wished to escape the contract with a third party. *Otero v. Wheeler*, 102 N.M. 770, 773–74, 701 P.2d 369, 372–73 (1985).