Delia Staley CROSSLEY and Nancy
Staley Rettig, Appellants,

v.

Joe H. STALEY, Jr., Individually and as
independent co-executor of the Estate
of Joe H. Staley, Deceased, Appellee.

No. 07–98–0060–CV.

Court of Appeals of Texas,
Amarillo.

Feb. 5, 1999.

Sayles & Lidji PC (Mark S. Werbner and Eric D. Pearson), Dallas, for appellant.

Joe H. Staley, Jr., Dallas, pro se.

Morrison & Shelton (Lonny D. Morrison), Wichita Falls, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

DON H. REAVIS, Justice.

By this appeal, appellants Delia Staley Crossley (Crossley) and Nancy Staley Rettig (Rettig) challenge a summary judgment rendered in an action for declaratory judgment brought by appellee Joe H. Staley, Jr., individually and as Independent Co–Executor of the Estate of Joe H. Staley, Deceased (Staley, Jr.), declaring that a certain document, printed with handwritten interlineations, constituted a compromise settlement agreement and that the agreement was valid and subsisting. By three points of error, Crossley and Rettig contend the trial court erred (1) in determining that it had subject matter jurisdiction, (2) by exercising jurisdiction, and (3) in refusing to transfer the case to Dallas County. Staley, Jr. responded by brief herein, but the Staley Business Partnership Limited (the partnership) and Jacqueline J. Gentry, Independent Executrix of the Estate of Helen Berry Steward, Deceased (Steward),[1] who were also defendants in the trial court, did not file a brief. Based upon the rationale expressed herein, we will affirm.

Our consideration of the points of error requires an analysis of the relevant history and events preceding the commencement of this action for declaratory judgment. Crossley, Rettig and Staley, Jr. are the children of Mildred W. Staley, who died on October 18, 1986, and Joe H. Staley, who died on May 18, 1994. Following the death of his wife, Joe H. Staley formed the partnership in August 1993. As of May 18, 1994, the partnership interest was held as follows: (1) Joe H. Staley, 5% general partnership and 84% limited partnership; (2) Staley, Jr. 5% general partnership and 5% limited partnership; and (3) Steward, 1% limited partnership. Joe H. Staley served as managing general partner until his death and Staley, Jr. succeeded his father as the sole general partner. The partnership agreement provided that upon the death of either general partner, that the interest of a deceased general partner "shall be converted from a general partnership interest into a limited partnership interest." It also provided that the partnership interest of the surviving general partner shall remain a general partnership interest.[2] In terms of value, the partnership interest of the deceased was a significant part of his estate.

Following their father's death, Staley, Jr. and Crossley applied to probate the will, stating that at the time of their father's death, he was domiciled and had his fixed place of residence in Wichita County. By order dated June 15, 1994, the will was admitted to probate and letters testamentary were issued to Crossley and Staley, Jr. as Independent Co–Executors[3] of the estate. Crossley, Rettig and Staley, Jr. are the prin-

---

1. Helen Berry Steward died before the trial court rendered its judgment.

2. The record does not include a copy of the partnership agreement or a schedule of partnership assets. According to the briefs however, we discern that the partnership assets included oil and gas working and other interests in Texas and Oklahoma, securities, stocks and bonds and an interest in a ranch in New Mexico.

3. *See* Tex. Prob.Code Ann. § 240 (Vernon 1980).

cipal devisees and legatees under the will.[4] Affidavits filed in support and opposition to Staley, Jr.'s motion for summary judgment reflect that during the administration of the estate, numerous disputes and differences developed between Crossley, Rettig and Staley, Jr. regarding the administration of their parents' estates and trusts created by their mother's will, matters concerning the partnership, and other matters.

Although no litigation was pending, Crossley, Rettig and Staley, Jr. agreed to meet with a mediator in September 1995 in an attempt to develop a plan for future action and settlement of disputes. All parties and their respective attorneys selected a mediator and attended a mediation session in Dallas. The mediation session lasted until late in the evening and was recessed without a definitive resolution of all issues. Thereafter, a typewritten proposed agreement entitled "Settlement Agreement and Mutual Releases" dated September 12, 1995, was circulated among the children and signed by them which contained numerous handwritten additions and revisions. In summary, the settlement agreement contemplated that:

- The partnership would be dissolved three years after filing of estate tax return.
- Additional estate taxes for Crossley and Rettig to be paid out of funds distributed from partnership.
- Non-partnership estate assets to be distributed as soon as IRS closure letter and payment of taxes.
- Partnership agreement amended to provide that all cash flow be distributed quarterly, and that Crossley and Rettig be provided quarterly financial reports. Also, the sisters would be admitted as limited partners after payment of estate taxes.
- Staley, Jr. to receive from the partnership, the working interest in the partnership, the Belden Ranch in New Mexico and the Gramatan JV, in repayment of his loan to the partnership.

- Staley, Jr. not to receive an executor's fee or a management fee. Partnership investments were limited as specified under the direction of outside advisor, and bonds to be purchased by agreement of the parties.
- Application be made to the District Court by attorney paid by the estate to divide GST Exemption Trust into three separate trusts, one for each child with the child to be his or her own trustee.
- Note and deed of trust covering Lavendale property to be assigned by Staley, Jr., to Crossley and Rettig, and Staley, Jr. as trustee as specifically set out therein.
- Provision for payment of the parties' attorney's fees.
- Crossley to receive $100,000 executor's fee.
- Each party provide an accounting to others of personal property removed from the Staley family home.
- Crossley and Staley, Jr. as co-executors, exchange an account of all Estate funds and assets coming into their possession or control. All estate cash to be deposited in accounts subject to joint checking privileges; and provision for an operating account.
- All estate securities to be maintained in "street name" in a brokerage house approved by Crossley and Staley, Jr.
- Each party to release the other party "from all claims and causes of action related to the Estate or the Partnership arising from events occurring prior to the date hereof."
- Certain note in approximate amount of $5,000 payable by Joe to the estate to be forgiven.
- Agree to finalize this agreement into a formal agreement with the provisions reasonably necessary to implement this agreement.

---

4. Because the record does not contain a copy of the will, we are unable to determine whether it contained any significant specific devises or bequests or whether the property passed in undivided interest to the named devisees and legatees.

- Stock trades at Merrill Lynch will be made at the employee's discounted rate or institutional rate whichever is less.

Among other recitals preceding the 15 numbered paragraphs contained in the agreement, the parties recited that Crossley and Staley, Jr. were the Independent Co-Executors of the Estate of Joe H. Staley, (the estate); that a dispute has arisen between the executors regarding administration of the estate and their respective conduct as executors; a dispute had arisen between Staley, Jr. as general partner of the partnership and Crossley and Rettig; and the parties desired to settle their disputes and exchange mutual releases. On February 2, 1997, by separate document, Steward, as a limited partner in the partnership, approved the mediation agreement "to the extent that such involve the Staley Business Partnership, Ltd." Then on May 12, 1997, the attorney for Staley, Jr. received a message *via* telecopier from an attorney for Crossley and Rettig advising that:

> "... unless we have been notified by the close of business on May 15, 1997, that Joe has agreed to meet on a mutually acceptable date prior to June 1, and in good faith attempt to agree on a restructuring of his consideration under the mediation agreement, his sisters plan to commence their proceedings against him thereafter."

Following receipt of the foregoing, Staley, Jr. commenced this action in Wichita County, designating Crossley, individually and in her capacity as Co-Independent Executrix, and Rettig as defendants. Also, the partnership and Steward were joined as defendants.

### Motion to Strike

■ Before we address the points of error, we must first consider Staley, Jr.'s motion filed in this Court, to strike documents outside the record contained in the appendix to the brief of Crossley and Rettig, and references in their brief to such documents. Citing *Sabine Offshore Service, Inc. v. City of Port Arthur,* 595 S.W.2d 840 (Tex.1979), *Henslee v. State,* 375 S.W.2d 474 (Tex.Civ. App.—Dallas 1963, writ ref'd n.r.e.), and other cases, Staley, Jr. asks this Court to strike (1) copies of letters dated May 9, 1997 and

May 12, 1997 from attorney Sweet to attorney Rugeley, (2) a copy of plaintiff's original petition in Cause No. 97–05444 entitled Delia Crossley and Nancy Rettig v. Joe H. Staley, Jr., *et al.,* District Court of Dallas County, and (3) a copy of Staley, Jr.'s motion to abate the Dallas County proceeding, and any reference to such matters in the Dallas County proceeding. He contends that matters outside the record cannot be considered and should be stricken. Crossley and Rettig however, contend that under Rule 38.1(j) of the Texas Rules of Appellate Procedure, the items mentioned may be properly included in the appendix to their brief.

On appeal from a summary judgment, we can consider only such matters as were presented to the trial court as authorized under Rule 166a(c) of the Texas Rules of Civil Procedure. In *Banowsky v. State Farm Mut. Auto. Ins.,* 876 S.W.2d 509, 513 (Tex. App.—Amarillo 1994, no writ), this Court held that an order not entered of record and only attached to a brief as an exhibit may not be considered. Also, as the matters may relate to the venue question presented in Crossley and Rettig's third point, we are required to consider the entire "record." Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 1986). Because the documents contained in the appendix were not presented to the trial court as summary judgment evidence or in connection with the venue motion, they are not included in the record and cannot be considered on appeal. As an appellate court, we only consider the evidence presented to the trial court. *Vanscot Concrete Co. v. Bailey,* 862 S.W.2d 781, 783 (Tex.App.—Forth Worth 1993), *affirmed,* 894 S.W.2d 757 (Tex.1995). Therefore, we hold that Rule 38.1(j) does not authorize the inclusion of items which would otherwise constitute evidence that was not received or presented to the trial court, as an exhibit in an appendix to an appellate brief. Accordingly, Staley, Jr.'s motion to strike is hereby granted.

### Jurisdiction

■ By their first point of error, Crossley and Rettig contend the trial court erred in granting summary judgment because it did

not have subject matter jurisdiction. In support of this point, they urge (a) there was no actual case or controversy because Crossley and Rettig never questioned the validity of the agreement, and (b) the action for declaratory judgment sought an advisory opinion. By their second point of error, Crossley and Rettig contend the trial court erred by exercising jurisdiction over the suit for declaratory judgment. In this regard, they assert (a) another suit was pending in another court involving the same parties and related issues, (b) the declaratory judgment action was brought merely to establish Staley, Jr.'s non-liability for their tort claims for breach of fiduciary duty, and (c) the declaratory judgment deprived them of their choice of forum. Because the history and law is common to both points, we will consider them simultaneously.

Staley, Jr., individually and as Independent Co–Executor of his father's estate, commenced this action for declaratory judgment naming Crossley, individually and in her capacity as Independent Co–Executor of her father's estate, Rettig, individually, and the partnership and Steward, as defendants. By his petition, in addition to alleging many of the historical facts mentioned above, including the written agreement following the pre-suit mediation efforts, he sought declaratory judgment relief under Chapter 37 of the Texas Civil Practice and Remedies Code Annotated (Vernon 1997),[5] to declare the written agreement valid, subsisting and in full force and effect. Under section 37.004 of the Code, a person interested under a written contract or other writings constituting a contract, may seek a determination of "any question of construction or **validity** arising under the instrument," as well as a declaration of rights or other legal relations thereunder. Also, under section 37.005 of the Code, an executor, trustee, devisee or legatee interested in the estate of a decedent may seek a declaration of rights or legal relations in respect to the estate (a) to direct the executors to do or abstain from doing any particular act in their fiduciary capacity, or (b) to determine any question arising in the administration of the estate, including questions of construction of wills and **other writings.**

The pleadings and summary judgment evidence demonstrate that Staley, Jr. is a person "interested" under a written contract or writing under section 37.004 of the Code or in a variety of capacities, (i.e. Independent Co–Executor of the estate, or a devisee or legatee thereof). Also, because of the differences between Staley, Jr. and Crossley, a resolution of the differences was necessary so they could administer the estate, pay taxes, and make distribution. In addition to resolving differences between the Independent Co–Executors, the family settlement agreement also established a plan for the management of estate assets pending payment of estate taxes, distribution and division of the estate, and that Staley, Jr. was entitled to declaratory relief regarding the agreement because it materially affected the orderly administration of the estate, and payment of executor's fees and taxes under section 37.005 of the Code.

Crossley and Rettig contend that subject matter jurisdiction did not exist because Staley, Jr. did not demonstrate that an actual case or controversy existed between the parties to the agreement, and because of their assertion that they never questioned the validity of the agreement. In deciding the subject matter jurisdiction, we look to the pleadings of Staley, Jr. made in good faith. *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466 (1949); *Firemen's Ins. v. Bd. of Reg. Univ. of Tex.*, 909 S.W.2d 540, 541 (Tex.App.—Austin 1995, writ denied); *Huston v. Federal Deposit Ins. Corp.*, 663 S.W.2d 126, 130 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). After Staley, Jr.'s attorney reported that counsel for Crossley and Rettig had sent a written message threatening a lawsuit unless Staley, Jr. would agree to meet and attempt to agree on "a restructuring of his consideration under the mediation agreement ...," Staley, Jr. filed the petition for declaratory judgment alleging, among other things, that Crossley and Rettig had failed to honor the agreement and had disavowed it. Crossley and Rettig acknowledge that jurisdiction exists if there is

---

**5.** All references to the Code are to the Texas Civil Practice and Remedies Code Annotated.

a controversy, but notwithstanding the message threatening a lawsuit unless certain demands were met, they contend they did not question the validity of the agreement.

Family settlement agreements of estate matters are highly favored by Texas courts. *Matter of Estate of Hodges*, 725 S.W.2d 265, 267 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *Kellner v. Blaschke*, 334 S.W.2d 315, 320 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.). They will not be disturbed for any ordinary mistake either of law or fact and will be upheld where all parties have the same knowledge or means of obtaining knowledge and there is no fraud, misrepresentation, concealment, or conduct otherwise inequitable on the part of another party. *Wedegartner v. Reichert*, 218 S.W.2d 304, 309 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.). A unilateral mistake of law by one party to a family settlement agreement will not support an avoidance of the agreement. *Atkins v. Womble*, 300 S.W.2d 688, 703 (Tex.Civ. App.—Dallas 1957, writ ref'd n.r.e.).

Although Crossley and Rettig may have been satisfied with some portions of the agreement, the letter from their attorney to Staley Jr.'s attorney amounts to a statement of their position that they were not satisfied with the provisions favorable to their brother, and notwithstanding the provision for mutual releases of claims, would file suit unless their demands for "restructuring his consideration" were met. In *Costley v. State Farm Fire and Cas. Co.*, 894 S.W.2d 380, 386 (Tex. App.—Amarillo 1994, writ denied), we held that repudiation of a contract results when one party, by unconditional words or actions, refuses to perform his obligation and that repudiation of a contract by one party gives rise to a right of recission when such repudiation is accepted by the other party. In *Transportation Ins. Co. v. Franco*, 821 S.W.2d 751, 754 (Tex.App.—Amarillo 1992, writ denied), we held that the imminence of litigation between the parties constituted a controversy essential to the maintenance of an action for declaratory judgment unless the contractual differences were resolved. Resultantly, when the unequivocal threat to file a suit is considered with the provision to exchange mutual releases, we conclude the

existence of a dispute was communicated by Crossley and Rettig's attorney to Staley, Jr.'s attorney. Moreover, by their answers to requests for admissions, Crossley and Rettig responded that the agreement did not include all understandings between the parties and that disputes existed with their brother regarding his alleged breach of fiduciary duties in all capacities, but that assertion is inconsistent with the agreement to exchange mutual releases. Accordingly, we conclude that a controversy existed conferring subject matter jurisdiction on the trial court.

Having determined that the trial court had subject matter jurisdiction, we now determine whether the trial court erred by exercising its jurisdiction over the declaratory judgment suit. By three sub-points, appellants contend (a) the trial court erred in exercising jurisdiction because another suit was pending involving the same parties and related issues, (b) the suit was brought merely to establish nonliability for potential tort claims for breach of fiduciary duty, and (c) the suit deprived them of their choice of forum. In their response to Staley, Jr.'s motion for summary judgment, although Crossley and Rettig attempted to raise the issue that the declaratory judgment should be denied because it would deprive them of their choice of forum, they did not oppose the motion on the grounds that there was another suit pending or that the suit was brought merely to establish nonliability for potential tort claims. Because Crossley and Rettig did not expressly present these issues now urged on appeal, they may not be considered by this Court as grounds for reversal. *San Jacinto River Authority v. Duke*, 783 S.W.2d 209, 210 (Tex.1990); *Gulf Ins. Co. v. Clarke*, 902 S.W.2d 156, 158 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

Crossley and Rettig's response to the motion for summary judgment urged that the trial court should decline to exercise jurisdiction because the suit was collusively brought to deprive them of their choice of forum for claims of defamation and abuse of fiduciary relationship. As stated here, they contend the trial court erred by granting the summary judgment because the suit deprived them of their choice of forum. The distinctions in the two statements of the point are

not significant. Essentially, Crossley and Rettig assert error because they contend that the suit for declaratory judgment deprived them of their choice of forum to assert tort claims. We disagree. The pleadings alleged the existence of a written settlement agreement following mediation which, among other things, contained a provision providing for the exchange of mutual releases, and which, if fully implemented would also affect the partnership and Steward, a limited partner. The petition further alleged that Crossley and Rettig had renounced the agreement. However, the pleadings do not, by implication or otherwise, make reference to any facts or events which would apply to a claim for defamation or abuse of fiduciary relationship. Accordingly, notwithstanding Crossley and Rettig's contention, this was not an action to preemptively file for declaration of nonliability of potential tort claims, but was a suit for a judicial determination of rights under the written settlement agreement, *Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764, 767 (Tex.App.—El Paso 1993, writ denied), and to bind the partnership and Steward to the agreement.

Moreover, although the response of Crossley and Rettig to the motion for summary judgment alleged that the declaratory judgment action was brought to "deprive the sisters of their choice of forum," they did not allege that their choice of forum had been determined and denied. Further, they did not submit any summary judgment evidence showing that their claims for defamation and abuse of fiduciary duties were based on events either before or after the date of the settlement agreement, or that their claimed choice of forum for litigation of those claims had been finally determined adversely to them. Accordingly, points one and two are overruled.

### Venue

■ By their third point of error, Crossley and Rettig contend the trial court erred in declining to transfer the case to Dallas County because the settlement agreement was reached in Dallas County, Staley, Jr. and Crossley resided in Dallas County, and the partnership and Steward were improperly joined in an attempt to maintain venue in Wichita County. Crossley and Rettig assert

that because the partnership or Steward were not parties to the settlement agreement, they were not necessary or proper parties to the action for declaratory judgment. Although Crossley and Rettig do not claim that the settlement agreement would not alter the partnership and resultantly, Steward's interest, they do contend that the partnership and Steward were joined as defendants by Staley, Jr. in "a transparent attempt to deny Crossley and Rettig the choice of forum in their contemplated tort suit and to improperly maintain venue in Wichita County." We disagree.

■ The standard of review of a trial court's venue determination is governed by section 15.064(b) of the Code. According to the statute, if venue was improper, the error cannot be harmless. In determining whether venue was improper, we must consider the entire record. If there is any probative evidence in the record indicating that venue was proper in the county where judgment was rendered, we must uphold the trial court's determination, even if the preponderance of the evidence is to the contrary. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex.1995); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993).

In response to the motion to transfer venue, Staley, Jr. asserted that because the partnership had its principal office and place of business in Wichita County, and Steward was a resident of Wichita County, that venue was proper there as to Crossley and Rettig under sections 15.002 and 15.005 of the Code. At least five provisions of the family settlement agreement as summarized above would involve the partnership in a variety of respects. The agreement contemplated that (1) the partnership would be dissolved three years after the estate tax return is filed; (2) additional estate taxes for Crossley and Rettig to be paid out of funds distributed from the partnership; (3) the partnership agreement be amended to provide that all cash flow be distributed quarterly and that Crossley and Rettig be admitted as limited partners after payment of estate taxes; (4) partnership investments be limited as recommended by an outside advisor; and perhaps more significantly, (5) Staley, Jr. to **receive** from the partnership, the working interest in the partnership, the Bel-

den Ranch in New Mexico and the Gramatan JV in **repayment** of his **loan** to the partnership. Although Steward's status as a limited partner is undisputed, Crossley and Rettig do not address the fact that implementation of the family settlement agreement would directly affect the partnership *and* Steward, nevertheless, they *contend* that Steward was improperly joined.

By Staley, Jr.'s letter of February 18, 1997, almost ninety days before his attorney received the demand to restructure the consideration flowing to him under the agreement, Staley, Jr. wrote Steward. In the letter, he referenced the mediation agreement of the family and other matters and requested that Steward acknowledge her approval of the matters by signing and returning a copy of the letter. Steward signed and returned the acknowledgment which in part provided that she did "approve the distributions, assignments and transfers under the terms set forth above and **agree** to the terms and conditions of the mediation agreement ... to the extent that such involve the Staley Business Partnership, Ltd." Even if some of the provisions of the agreement relating to the partnership may not be significant to the limited partner, the provisions that the partnership will be dissolved and that it would transfer certain assets to Staley, Jr. in satisfaction of his loan to the partnership do affect substantial rights of Steward as a limited partner.

None of the authorities cited by Crossley and Rettig in support of their third-point contention address the propriety of joining a partner or the partnership as it applies to the venue question now presented. Because the limited partnership agreement should be construed and interpreted according to the applicable law of contracts, *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex.1976), the agreement of Staley, Jr. and his sisters to modify the partnership agreement would not be effective as to Steward without her consent. *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 114 (Tex.App.—El Paso 1997, pet. denied). In addition to securing Steward's agreement to the changes affecting the partnership, the notice by Staley, Jr. to Steward was also appropriate because as the general partner, he owed fiduciary duties to *Stephen Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 547 (Tex.App.—Dallas 1991, no writ), and the agreement, if implemented, authorized the transfer of partnership assets to Staley, Jr. in satisfaction of the partnership debt to him.

After Staley, Jr. received Steward's approval and agreement to the terms of the settlement agreement to the extent that it affected the partnership, he received notice that his sisters were renouncing (*i.e.* threatening to file suit unless he agreed to renegotiate) the agreement. Because Steward approved and agreed to the provisions of the agreement as applied to the partnership, and the agreement, if implemented, would affect her interests as a limited partner, the record contains probative evidence indicating that venue was proper in Wichita County, and we must uphold the trial court's determination. *Ruiz*, 868 S.W.2d at 758. Point of error three is overruled.

Accordingly, the judgment of the trial court is affirmed.