In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-225 CV


____________________



IDA MARIE STARK, ET AL., Appellants



V.



EUNICE R. BENCKENSTEIN, ET AL., Appellees






On Appeal from the 260th District Court


Orange County, Texas


Trial Cause No. D-00298-C






O P I N I O N


 This suit arises from claims related to the estates of three decedents - H.J. Lutcher
Stark ("Lutcher"), and two of his wives, Nita Hill Stark ("Nita"), and Nelda C. Stark
("Nelda"). Appellants, who are heirs of William H. Stark II (one of Lutcher's and Nita's
sons), contest the trial court's grant of summary judgment against them in a declaratory
judgment action. The appellants are Ida Marie Stark, individually and as independent
executor of the Estate of William H. Stark II, Deceased, William H. Stark III, Randall Hill
Stark, and Linda Marie Stark Barras. The appellees are Eunice R. Benckenstein, Walter
G. Riedel III, and Roy Wingate, each individually and as independent co-executors of the
estate of Nelda C. Stark, deceased (the "Estate"); Eunice R. Benckenstein, as successor
independent executrix of the estate of H.J. Lutcher Stark, deceased; the Nelda C. and H.J.
Lutcher Stark Foundation (the "Foundation"); Clyde V. McKee, Jr., (1) individually; and the
Attorney General of the State of Texas, intervenor. We will affirm.

 Nita died in 1939. Her probated will named Lutcher as independent executor and
divided her residuary estate between their children, William H. Stark II ("Bill") and
Homer Stark ("Homer"). As part of the final settlement of Nita's estate, Homer and Bill
executed a receipt and release in 1948 for the properties they received and disclaimed any
further interest in properties of their mother's estate.

 Lutcher married Nelda in 1943. (2) When Lutcher died in 1965, his will was admitted
to probate and Nelda was appointed independent executrix pursuant to Lutcher's will.
Under the will's terms, Homer and Bill each were entitled to legacies of $1,000,000, with
the remainder of the estate being divided between Nelda and the Foundation. The legacies
to Homer and Bill were paid, and each executed a release in 1969.

 Bill died in 1979. In 1988, his heirs, appellants here, filed suit against the
Foundation and Nelda, individually and as independent executrix of Lutcher's estate. As
plaintiffs in this prior litigation, appellants claimed that Lutcher, as independent executor
of Nita's estate, had concealed material information regarding Nita's alleged community
property; they also asserted that Nelda and the Foundation had continued the alleged
fraudulent concealment and had benefitted from Nita's assets, which allegedly had been
wrongfully diverted first to Lutcher and then to Nelda and the Foundation, all to the
detriment of Bill and Homer. Bill's heirs sought: (1) an accounting of the estates of Nita
and Lutcher; (2) a constructive trust over the assets of Nita's and Lutcher's estates; and
(3) damages. Ultimately, this prior litigation settled and plaintiffs, the appellants here,
received $2,500,000 and executed a release.

 Nelda died in 1999, and her will was admitted to probate, with appellees
Benckenstein, Wingate, and Riedel being appointed independent co-executors.
Subsequently, appellees learned appellants intended to file suit to set aside the release.
Appellees filed the instant suit under the Uniform Declaratory Judgments Act ("Act"). See
Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (Vernon 1997 & Supp. 2005). Appellees
sought a declaration of the effect of the release against claims based on issues adjudicated
in the prior litigation.

 After appellees filed a motion for summary judgment in their declaratory judgment
cause, appellants filed counterclaims and third-party claims alleging breach of fiduciary
duty, fraud, conversion, cancellation of release, constructive and/or resulting trust.
Appellees amended their motion for summary judgment to include grounds of release,
restitution, ratification, and res judicata. The trial court granted summary judgment for
appellees and awarded fees and costs to appellees under the Act.

 Appellants bring three issues. First, they maintain the trial court erred in granting
declaratory judgment; second, they contend the trial court erred in determining res judicata
applied; and third, they say the grant of attorneys' fees was error.

Was the Declaratory Judgment Proper?


 Appellants assert the trial court's grant of declaratory judgment was improper for
three reasons: (1) appellees were not entitled to a declaration of non-liability in a tort
action; (2) necessary parties were not before the court; and (3) Texas courts lack subject
matter jurisdiction to determine real property interests in out-of-state property. 

 Appellants first argue that because their own causes of action presented as 
counterclaims - fraud, breach of fiduciary duty, negligent misrepresentation, and
conversion - sound in tort, appellees may not obtain a judicial declaration of non-liability. 
Appellees respond that their declaratory action only sought a declaration as to the validity
of the release signed by appellants in the prior litigation and did not seek a judicial
declaration of tort non-liability.

 The purpose of the Declaratory Judgments Act is to declare existing rights; it is
designed to "settle and to afford relief from uncertainty and insecurity with respect to
rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. §
37.002(b) (Vernon 1997); see Republic Ins. Co. v. Davis, 856 S.W.2d 158, 164 (Tex.
1993). Among other instances in which a declaratory judgment would be proper, the Act
provides that an interested person under a written contract, or other writings constituting
a contract, may seek a determination of any question of construction or validity arising
under the instrument and may obtain a declaration of rights, status, or other legal relations
thereunder. See Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 1997). A
contract may be construed either before or after a breach. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.004(b) (Vernon 1997). 

 A potential defendant may not use a declaratory judgment action to determine its
potential tort liability. See Abor v. Black, 695 S.W.2d 564, 566-67 (Tex. 1985). 
However, this rule evolves from the recognition that only plaintiffs may sue for torts. See
Hartman v. Sirgo Operating, Inc., 863 S.W.2d 764, 767 (Tex. App.--El Paso 1993, writ
denied). In a contractual relationship, any party may breach the contract, and, thus, any
party may sue for the breach and seek a judicial determination of contractual rights. Id.

 As a release is a contract, Schlumberger Technology Corp. v. Swanson, 959 S.W.2d
171, 178 (Tex. 1997), appellees were entitled to request a determination of questions of
construction or validity arising under the instrument and to obtain a declaration of rights,
status, or other legal relations thereunder. See Tex. Civ. Prac. & Rem. Code Ann. §
37.004(a)(Vernon 1997); see Hartman, 863 S.W.2d at 767. 

 Appellees' petition for declaratory relief sought construction of a release instrument
and a declaration of: (1) the validity of the release instrument (2) the rights and legal
relations under the release instrument, (3) the full and final disposition of all claims under
the release instrument, and (4) the binding effect of the release instrument. As
demonstrated by their pleadings, appellees did not seek a potential tort liability
determination. Rather, their suit sought a judicial determination of their rights under a
contract. See Crossley v. Staley, 988 S.W.2d 791, 797 (Tex. App.--Amarillo 1999, orig.
proceeding). 

 Appellants next argue we lack jurisdiction to decide this matter because appellees'
petition for declaratory judgment excludes necessary parties from the current litigation and,
thus, is fatally defective. Appellants contend Bill's brother, Homer Stark, and Homer's
family are the excluded necessary parties. The Homer Starks were plaintiffs in the prior
litigation, but signed a separate, though apparently similar, release in connection with its
settlement.

 The failure to join parties, even those necessary and indispensable, generally is not
jurisdictional. See Cooper v. Texas Gulf Industries, Inc., 513 S.W.2d 200, 204 (Tex.
1974). Instead, the question usually is whether the trial court should have proceeded with
those who were present. Brooks v. Northglen Ass'n, 141 S.W.3d 158, 162 (Tex. 
2004)(citing Cooper, 513 S.W.2d at 204). A party's absence rarely will deprive the court
of jurisdiction to adjudicate the dispute between parties before it. Pirtle v. Gregory, 629
S.W.2d 919, 920 (Tex. 1982). 

 We review a trial court's decision to proceed or not to proceed in the absence of
necessary parties under an abuse of discretion standard. See Allegro Isle Condo. Ass'n v.
Casa Allegro Corp., 28 S.W.3d 676, 678-79 (Tex. App. -- Corpus Christi 2000, no pet.);
see also MCZ, Inc. v. Smith, 707 S.W.2d 672, 675 (Tex. App. -- Houston [1st Dist.] 1986,
writ ref'd n.r.e.). A trial court abuses its discretion when it rules arbitrarily,
unreasonably, without regard to guiding legal principles, or without supporting evidence. 
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998).

 Recently, the Brooks Court analyzed the interplay between the Declaratory
Judgment Act and Texas Rule of Civil Procedure 39. See Brooks, 141 S.W.3d at 162-63.
The Court observed that Rule 39 governs joinder of persons under the Declaratory
Judgment Act. Brooks, 141 S.W.3d at 162. While both Rule 39 and section 37.006(a) of
the Declaratory Judgment Act (3) mandate joinder of persons whose interests would be
affected by the judgment, a trial court's declarations do not prejudice the rights of any
person not a party to the proceeding. See Brooks, 141 S.W.3d at 162-63. Rule 39 (4)

determines if a trial court has authority to proceed without joining a mandatory party. Id. 

 Appellants fail to show that Rule 39 required the presence of the Homer Stark
family or that the trial court abused its discretion in proceeding without them. See Tex.
R. Civ. P. 39; see also Allegro Isle Condo. Ass'n, 288 S.W.3d at 678-79. Appellants
further fail to explain what prevents the trial court's judgment from being "a final and
complete adjudication of the dispute for the parties who were before the court." Brooks,
141 S.W.3d at 162. Accordingly, we find the trial court did not abuse its discretion in
proceeding without the presence of the Homer Stark family.


 Appellants further argue that Texas courts lack subject matter jurisdiction to
adjudicate title to real property located in Louisiana. Appellants contend a "naked question
of title" exists because Bill and Homer Stark are entitled to interests in Louisiana real
property under that states's forced heirship rights. (5)

 It is well-settled law that Texas courts are without power or jurisdiction to
adjudicate title to land in another state. Holt v. Guerguin, 106 Tex. 185, 163 S.W. 10, 12
(1914); Kelly Oil Co., Inc. v. Svetlik, 975 S.W.2d 762, 764 (Tex. App.--Corpus Christi
1998, pet. denied); Hartman v. Sirgo Operating, Inc., 863 S.W.2d 764, 766 (Tex.
App.--El Paso 1993, writ denied). However, Texas courts may require a party over whom
it has jurisdiction to convey a real property interest located in another state. McElreath 
v. McElreath, 162 Tex. 190, 345 S.W.2d 722 (1961); Hartman, 863 S.W.2d at 766. "The
distinguishing factor between these two principles is whether the cause before the Court
involves a naked question of title." Hartman, 863 S.W.2d at 766 (citing Massie v. Watts,
10 U.S. (6 Cranch) 148, 3 L.Ed 181 (1810)). 


 We look to the facts alleged in plaintiff's petition to determine the nature of the
rights and relief sought. McDowell v. McDowell, 143 S.W.3d 124, 127 (Tex. App.--San
Antonio 2004, pet. denied)(citing Renwar Oil Corp. v. Lancaster, 154 Tex. 311, 276
S.W.2d 774, 775 (1955)). Here, appellees sought a determination of the parties' rights
and legal obligations under the release agreement. The trial court was not required to
determine ownership of Louisiana real property interests and neither was any relief sought
requiring the transfer of such interests. This case does not involve a naked question of
title. See Hartman, 863 S.W.2d at 766-67. We hold the trial court had subject matter
jurisdiction. 

 Appellants' arguments under issue one are not persuasive. Issue one is overruled.

 Issue two asks: "Did the court err in granting in [sic] ruling a prior judgment is res
judicata as to matters that subsequently arise?" As Barr v. Resolution Trust Corp. ex rel.
Sunbelt Federal Sav., 837 S.W.2d 627, 628 (Tex. 1992), explains, the doctrine of res
judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that a
court has finally adjudicated as well as relitigation of related matters that, with the use of
diligence, a party should have litigated in the first suit. Res judicata was one of the trial
court's stated grounds for granting summary judgment in appellees' favor. (6)

 But while appellants frame issue two solely in res judicata terms, their briefing of
issue two emphasizes other arguments attacking the summary judgment; in particular, they
contend the release they signed in the prior litigation does not bar their claims here. We
consider first whether the trial court properly granted summary judgment for appellees
regarding the release's preclusive effect.

 When reviewing a summary judgment, the appellate court takes as true all evidence
favorable to the nonmovant; the appellate court also indulges every reasonable inference
in the nonmovant's favor and resolves any doubts in nonmovant's favor as well. 
Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). Texas Rule of Civil
Procedure 166a(c) requires the summary judgment movant to show that no genuine issue
of material fact exists and that it is entitled to judgment as a matter of law. Haase v.
Glazner, 62 S.W.3d 795, 797 (Tex. 2001); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217,
223 (Tex. 1999). An appellate court may review and affirm on any ground the movant
presented in its motion for summary judgment. See Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004).

 The release, entitled "Full, Final, and Complete Release," provided for the 
payment of $2,500,000 to appellants and for entry of an order dismissing appellants' suit
with prejudice. The order of dismissal with prejudice was entered January 17, 1991. The
appellants here were the releasing parties in the prior litigation. The appellees here all
were either released parties (7) in the prior litigation or are successors in interest to
previously released parties.

 The claims released in the prior litigation included: all claims, demands, and causes
of action, known or unknown, which were or could have been alleged in plaintiffs' several
petitions; all claims, demands, and causes of action, known or unknown, arising out of or
connected with: (a) any actions or omissions by Lutcher, whether individually or in other
capacities, arising at any time during his life time; (b) any acts or omissions by Nelda,
whether individually or in other capacities, "arising at any time during her lifetime until
the date of the execution of this release;" (8) (c) Nita's estate or Lutcher's estate; (d) the
operation or activities of the Foundation, or any other foundation or charity principally
supported by Nelda; (e) the operation or activities of any corporation of partnership or
business entity in which Lutcher or Nelda has or had a controlling interest.

 The release also contained the following "non-reliance" language:

 Each Releasing Party states that he or she is entering into and executing this
Full, Final, and Complete Release based upon his or her own free evaluation
of the facts and circumstances surrounding his or her claims, demands, and
causes of action and in reliance upon the advice of his or her own attorneys. 
Each Releasing Party expressly states that no representations, promises or
agreement other than the payment of Two Million Five Hundred Thousand
$2,500,000 has been made by any Released Party and each Releasing Party
expressly states that the entering into and execution of this Full, Final and
Complete Release is in no way conditioned upon or in reliance upon any
representations, promises, or other agreements made by any of the Released
Parties.


 Citing Niemeyer v. Tana Oil and Gas Corp., 39 S.W.3d 380, 388 (Tex. App.--Austin 2001, pet. denied), appellants maintain that while the release here applies to all past
and present claims existing at the time of its execution, the release does not expressly bar
prospective claims that might arise as to future claims or claims involving fraud in the
underlying transaction, including their claims in the current litigation. (9) However,
Niemeyer is distinguishable; there the release did not address "unknown" claims and
disclaimer of reliance was not an issue. Niemeyer, 39 S.W.3d at 388-89.

 On the other hand, Schlumberger is more directly on point; it involves both a
release of unknown claims and a disclaimer of reliance. See Schlumberger, 959 S.W.2d
at 174. It also involves presumed fraud. Id. at 178 ("Accordingly, we assume, as we
must, that Schlumberger misrepresented the project's technological feasibility and
commercial viability and that such misrepresentations are actionable as fraudulent
inducement.").

 In Schlumberger, a settlement agreement was reached between the Schlumberger
Corporation and the Swansons, who were partners in a joint venture to mine diamonds on
the ocean floor off the coast of South Africa. See id. at 174. Schlumberger and the
Swansons negotiated a buy-out, and, in exchange for the price paid by Schlumberger, "the
Swansons relinquished all rights, claims, and interests in the offshore diamond project .
. . and release[d] all causes of action against Schlumberger, known or unknown." Id. The
Swansons specifically agreed in the release that "they were not relying on any statement
or representation of Schlumberger . . ., that they were relying on their own judgment, and
that they had been represented by counsel who had explained the entire contents and legal
consequences of the release." Id. Later, the Swansons sued Schlumberger, claiming they
were fraudulently induced into signing the contract and release and misled by
Schlumberger about the value of the project. Id.

 The Schlumberger Court recognized the inherent tension between the principle that
the "[p]arties should be able to bargain for and execute a release barring all further
dispute," Id. at 179, and prior authority holding that clauses in contracts, including merger
and disclaimer provisions, need not bar subsequent claims of fraudulent inducement. See
id. at 178-79. The court held "a release that clearly expresses the parties' intent to waive
fraudulent inducement claims, or one that disclaims reliance on representations about
specific matters in dispute, can preclude a claim of fraudulent inducement," but also
emphasized that "a disclaimer of reliance or merger clause will not always bar" such a
claim. Id. at 181. Because the parties should be able to rely on their negotiated disclaimer
or merger clauses to resolve fully their disputes, the question for the court was "under
which circumstances such disclaimers are binding." Id. at 179. For the answer to this
question, the court looked to "[t]he contract and the circumstances surrounding its
formation . . . ." Id.

 Schlumberger indicates certain factors to consider when determining whether a
reliance disclaimer is binding. That the negotiating parties in Schlumberger were
represented by counsel, were experts in the subject matter of the negotiations, and were
bargaining at arm's length were important to the Court. See id. at 180. In addition, the
Court noted that at the center of the parties' dispute was the object of the alleged
misrepresentations - the value of the mining project - and that the sole purpose of the
unambiguous release was to end that dispute "once and for all." Id. The Court concluded
that, based on all of the facts and circumstances surrounding the release, it was clear the
release was meant to apply to representations about the value of the project, "which, after
all, was the very dispute that the release was supposed to resolve." Id. The Swansons
were precluded from claiming reliance on Schlumberger's prior representations about the
project's value. Id. While rejecting the argument that merger or disclaimer clauses should
be binding whenever parties to the agreement are represented by independent legal
counsel, the Court did not require that all the Schlumberger factors be present for a
reliance disclaimer to be binding. See id. at 178; Atlantic Lloyds Ins. Co. v. Butler, 137
S.W.3d 199, 216-17 (Tex. App.--Houston [1st Dist.] 2004, pet. denied).

 Here the release, as in Schlumberger, (10) covers all claims, whether known or
unknown and further disclaims reliance on representations about the specific matter in
dispute. The parties here were represented by counsel, and bargained at arm's length over
the agreement's terms. The final agreement contained releases of claims and a payment
of cash. The disclaimer language signed by the appellants case tracks the language of the
disclaimer held effective in Schlumberger and similarly expresses the parties' intent to
unequivocally disclaim reliance upon appellees' representations. And, although there is
no evidence the individual appellees were "knowledgeable and sophisticated" about issues
raised in the prior litigation, there is no dispute the plaintiffs were represented by "highly
competent and able legal counsel" who negotiated at arm's length with appellees' counsel. 
See Butler, 137 S.W.3d at 216-17.

 Appellants argue Schlumberger does not apply here because of appellees fraudulent
representations. Even if we assume appellees fraudulently misrepresented material facts
to appellants in the prior litigation, the release's disclaimer language precludes appellants'
recovery here. (11) See Schlumberger, 959 S.W.2d at 180. 

 Appellants further assert Schlumberger does not apply because appellees owed
appellants a fiduciary duty of full and complete disclosure. For Schlumberger's fiduciary
duty exception to apply here, appellants are required to show the existence of a fiduciary
relationship between themselves and appellees at the time the release was executed in 1991. 
Id. at 177. 


 Appellants complain Nelda, as independent executrix of Lutcher's estate, knowingly
and intentionally included assets and properties in his estate that belonged to Nita's estate
instead. However, any of appellants' claims against Nelda regarding Lutcher's estate were
resolved in the prior litigation. In 1990, the trial judge granted partial summary judgment
in Nelda's favor, dismissing all of appellants' claims against her as independent executrix
of Lutcher's estate. If Nelda allegedly breached any fiduciary duty to appellants arising
from her role as independent executrix of Lutcher's estate, that issue was resolved by the
1990 partial summary judgment. Appellants fail to show how Nelda had a fiduciary duty
to them in 1991, when the prior litigation was settled with the release's execution. 
Appellants further fail to show how Nelda's independent executrix, Benckenstein, or the
Foundation would have a fiduciary duty to appellants in the absence of Nelda's having such
a duty.

 We find the trial court's summary judgment was proper based on the release and
its disclaimer of reliance. Our findings on the release issue are dispositive of appellants'
summary judgment complaints. See Two Thirty Nine Joint Venture, 145 S.W.3d at 157. 

 We need not consider the remainder of appellants' issue two arguments. (12) Issue two is
overruled.

 In issue three, appellants complain appellees have failed to establish the
requirements for an award of attorneys' fees under the Declaratory Judgment Act. The
trial court awarded $19, 491.55 in attorneys' fees to intervenor, the Attorney General of
the State of Texas and $458,411.14 in attorneys' fees to the remainder of the appellees. 

 When a trial court awards fees in a declaratory judgment proceeding, we review the
award under an abuse of discretion standard, "subject to the requirements that any fees
awarded be reasonable and necessary, which are matters of fact, and to the additional
requirements that fees be equitable and just, which are matters of law." Bocquet v.
Herring, 972 S.W.2d 19, 21 (Tex. 1998); Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(Vernon 1997). A trial court abuses its discretion when it rules arbitrarily, unreasonably,
or without regard to guiding legal principles or supporting evidence. Bocquet, 972 S.W.2d
at 21. However, an abuse of discretion does not occur where the trial court bases its
decisions on conflicting evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978). 
Furthermore, an abuse of discretion does not occur as long as some evidence of substantive
and probative character exists to support the trial court's decision. Holley v. Holley, 864
S.W.2d 703, 706 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

 To establish that the fees were reasonable and necessary, the party seeking
attorney's fees is required to show the fees were incurred while suing the opposing party
on a claim allowing recovery of such fees. See Stewart Title Guar. Co. v. Sterling, 822
S.W.2d 1, 10 (Tex. 1991). "A recognized exception to this duty to segregate arises when
the attorney's fees rendered are in connection with claims arising out of the same
transaction and are so interrelated that their 'prosecution or defense entails proof or denial
of essentially the same facts.'" Id. at 11 (quoting Flint & Assoc. v. Intercontinental Pipe
& Steel, Inc., 739 S.W.2d 622, 624-25 (Tex. App.--Dallas 1987, writ denied)). 
"Therefore, when the causes of action involved in the suit are dependent upon the same
set of facts or circumstances and thus are 'intertwined to the point of being inseparable,'
the party suing for attorney's fees may recover the entire amount covering all claims." Id.
at 11-12 (quoting Gill Sav. Ass'n v. Chair King, Inc., 783 S.W.2d 674, 680 (Tex. App.--Houston [14th Dist.] 1989), modified, 797 S.W.2d 31 (Tex. 1990)).

 Appellants maintain appellees did not show the requested attorneys' fees were
reasonable, necessary, equitable, and just. Appellants say appellees only produced billing
summaries rather than billing statements to support the fee amounts and that the summaries
do not show who performed the work and only show the months in which it was
performed. Appellants further maintain appellees should have segregated the attorneys'
fees incurred with the bringing of the declaratory judgment action from those incurred in
defending the various counterclaims asserted by appellants.

 Attorneys for appellees presented extensive testimony and exhibits regarding their
fees, including their time spent on the case, their usual and customary rates, the difficulty
of the issues, and their expertise. Appellees' counsel of record testified regarding the
reasonableness and necessity of the fees and costs incurred from the filing of the
declaratory action to the summary judgment hearing. Such testimony provides sufficient
evidence as to the reasonableness and necessity of the fees and also shows the justness and
equity of the fees. The testimony encompassed (1) the experience of the attorneys and
paralegals involved; (2) the complexity of the issues; (3) the hours worked by the attorneys
and paralegals; (4) their billing rates; (5) rates for similar services in the locality; (6) fees
incurred based on time and rates as well as costs, and (7) the result obtained. Appellees'
counsel also testified the fees were reasonable and necessary. Further, appellees also
submitted invoices reflecting the tasks performed, the individuals who performed the tasks,
the time spent and the hourly rate charged. That appellants' expert witness presented
conflicting testimony does not show the trial court abused its discretion. See Davis, 571
S.W.2d at 862.

 Appellees show that appellants' counterclaims not only arise out of the same
transaction as the release upon which the declaratory action is based, but they also are the
same claims released by appellants in the prior litigation. We find the prosecution of the
declaratory action and the defense of the counterclaims are inextricably intertwined and
that segregation of the fees was unnecessary. 

 On the record before us, we cannot say that the district court abused its discretion
in awarding attorney's fees pursuant to appellees. We overrule appellants' third issue and
affirm the trial court's grant of summary judgment, including the award of attorneys' fees
and costs in favor of appellees.

 AFFIRMED.

 ________________________________ 
 DON BURGESS

 Justice


Submitted on October 1, 2004

Opinion Delivered December 30, 2004



Before McKeithen, C.J., Burgess and Hill (13), JJ.
1. Appellee Clyde V. McKee, Jr., died on September 14, 2004, and a suggestion of
his death was filed on September 30, 2004. The suggestion requested that the Estate of
Clyde McKee, Deceased, be made an appellee in place of the decedent personally and that
Larry C. Hunter, counsel of record for decedent, be designated as the estate's personal
representative for this appeal.
2. After Nita's death, Lutcher married Ruby Childers, who died in 1941. Ruby was
Nelda's sister.
3. Section 37.006 of the Declaratory Judgment Act states that where "declaratory
relief is sought, all persons who have or claim any interest that would be affected by the
declaration must be made parties." Tex. Civ. Prac. & Rem. Code § 37.006(a) (Vernon
1997).
4. Rule 39 states in subparts (a) and (b) as follows:


 (a) Persons to be Joined if Feasible. A person who is subject to
service of process shall be joined as a party in the action if (1) in his absence
complete relief cannot be accorded among those already parties, or (2) he
claims an interest relating to the subject of the action and is so situated that
the disposition of the action in his absence may (i) as a practical matter
impair or impede his ability to protect that interest or (ii) leave any of the
persons already parties subject to a substantial risk of incurring double,
multiple, or otherwise inconsistent obligations by reason of his claimed
interest. . . .


 (b) Determination by Court Whenever Joinder Not Feasible. If a
person as described in subdivision (a) (1)-(2) hereof cannot be made a party,
the court shall determine whether in equity and good conscience the action
should proceed among the parties before it, or should be dismissed, the
absent person being thus regarded as indispensable. The factors to be
considered by the court include: first, to what extent a judgment rendered
in the person's absence might be prejudicial to him or those already parties; 
second, the extent to which, by protective provisions in the judgment, by the
shaping of relief, or other measures, the prejudice can be lessened or
avoided; third, whether a judgment rendered in the person's absence will be
adequate; fourth, whether the plaintiff will have an adequate remedy if the
action is dismissed for non-joinder.


 Tex. R. Civ. P. 39(a), (b).

5. For informational purposes only, we note the Louisiana Third Circuit Court of
Appeals, in an unpublished opinion, recently affirmed the trial court's dismissal of
appellants' claims against appellees in the Louisiana litigation. Ancillary Succession of
H.J. Lutcher Stark, No. 04-323 (3rd Cir. Sept. 29, 2004)(not designated for publication). 
6. Generally, if a suit is dismissed with prejudice, as occurred here, res judicata
applies. See Bell v. Moores, 832 S.W.2d 749, 755 (Tex. App.--Houston [14th Dist.]
1992, writ denied). Or where there is a legal relationship, such as under a lease or
contract as occurs here, all claims arising from that relationship generally will arise from
the same subject matter and be subject to res judicata. See Sanders v. Blockbuster, Inc.,
127 S.W.3d 382, 386 (Tex. App.--Beaumont 2004, pet. denied).
7. The released parties were: Nelda Childers Stark, individually and as alleged
independent executrix of the estate of H.J. Lutcher Stark, deceased; to the extent it exists,
if at all, the estate of H.J. Lutcher Stark, deceased; the Nelda C. and H.J. Lutcher Stark
Foundation; all officers, directors, attorneys, and employees of either the Nelda C. and
H.J. Lutcher Stark Foundation or Nelda Childers Stark; any individual, corporation,
organization, foundation, or other entity alleged now or in the past or in the future to be
owners or possessors of or participants in any transactions involving any property alleged
to have properly belonged to but withheld from or misappropriated in the estate of Nita
Hill Stark, deceased.
8. The release agreement is not dated. But the order dismissing with prejudice was
entered January 17, 1991.
9. Appellants' current claims are fraud and conversion, as well as breach of
fiduciary duty; appellants further seek to cancel the release, and to impose a constructive
trust.
10. In Schlumberger, the parties released all "'causes of action of whatsoever nature,
or any other legal theory arising out of the circumstances described above, from any and
all liability damages of any kind known or unknown, whether in contract or tort.'" 
Further, the Swansons disclaimed reliance upon representations by Schlumberger, saying:


 "[E]ach of us [the Swansons] expressly warrants and represents and does
hereby state . . . and represent . . . that no promise or agreement which is
not herein expressed has been made to him or her in executing this release,
and that none of us is relying upon any statement or representation of any
agent of the parties being released hereby. Each of us is relying on his
or her own judgment and each has been represented by . . . legal counsel
in this matter. The aforesaid legal counsel has read and explained to each
of us the entire contents of this Release in Full, as well as the legal
consequences of this Release . . . . (emphasis added)"

 

Schlumberger, 959 S.W.2d at 180.
11. To support their fraud claim, appellants direct us to the sworn statements and
affidavits of (1) Charles M. Kinney, a former security guard for the Stark family, (2)
Clayton Newberry, also a former security guard for the Stark family, and (3) John
Creswell, an employee of the Stark family for over fifty years. Appellants maintain the
statements of Kinney and Newberry show appellees hid evidence during the prior
litigation, while Creswell's statement shows appellees burned evidence during the prior
litigation. But, Kinney testified he had only "second hand" information about documents
being hidden. Newberry maintained, "to the best of [his] knowledge", that certain
documents about Stark museum assets were never provided to appellants. Creswell could
identify only one type of document being burned during the prior litigation - building
material tickets. 
12. Other of appellants' issue two arguments are:

 1. retention of benefits paid does not constitute ratification;

 2. statute of limitations does not bar appellants' claims;

 3. appellants' factual claims are valid;

 4. appellants have an interest in wrongfully withheld properties and assets,
namely, Big Lake and other Louisiana property; Caddo Parish, Louisiana,
mineral interest; Texas timber - Wier Long-leaf lumber; and Roslyn Ranch
in Colorado.
13. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. §
74.003(b) (Vernon Supp. 2004).