Opinion filed June 23, 2022



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00052-CV
_____

## SM ENERGY COMPANY, Appellant

## V.

## UNION PACIFIC RAILROAD COMPANY, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 54747**

### O P I N I O N

This is an appeal from an order granting a motion to dismiss for improper venue based upon a forum-selection clause. *See Xia v. Floyd*, 638 S.W.3d 821, 825 (Tex. App.—Fort Worth 2021, no pet.) (forum-selection clauses are enforced through a motion to dismiss). The parties disagree about the enforceability of a forum-selection clause contained in three oil and gas leases. The trial court

determined that the forum-selection clauses were enforceable. The plaintiff challenges this determination in two issues. We affirm.

*Background Facts*

SM Energy Company and Union Pacific Railroad Company are parties to three oil and gas leases covering lands in Howard County.[1] Each lease is a "paid up" lease. Union Pacific asserts that the lessee under the leases was required to pay a certain sum of money as a bonus on a per-acre basis for the leases.[2] Additionally, each lease contained the same forum-selection clause. The forum-selection clause provided that "[v]enue of all disputes arising out of or relating to this Lease shall be exclusively in Omaha, Nebraska and no other place."

Additionally, each lease contained a most-favored-nations clause. *See Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 61 (Tex. 2015) (when an oil and gas lease contains a most-favored-nations clause, it typically provides that a lessee who pays higher payments on nearby leases must pay matching payments to the lessor under the subject lease). In relevant portion, the most-favored-nations clause in two of the leases provides as follows:

> **Favored Nations.** If Lessee pays a larger bonus per net mineral acre for any lease within a one (1) mile radius of the premises within three (3) years of the effective date of this lease or agrees to pay any royalty within the effect of which would reduce the working interest owners' net revenue interest below 75% after taking into account all royalty, non-participating royalty, and overriding interest burdens, then Lessor will be entitled to the greater bonus or royalty, as the case may be, which Lessee hereby agrees to pay.

---

[1]SM Energy is the successor-in-interest to the original lessee of the three oil and gas leases. The first lease was executed on December 15, 2015, and covered approximately 163.8 acres. The second lease was executed on February 16, 2016, and covered approximately 9.16 acres. The third lease was executed on February 25, 2016, and covered approximately 640 acres.

[2]Union Pacific asserts that the 163.8-acre lease originally required a bonus of $1,500 per acre; the 9.16-acre lease originally required a bonus of $1,500 per acre; and the 640-acre lease originally required a bonus of $3,750 per acre.

The provision in the third lease contains the same provision with the exception that it only applies to neighboring leases that are greater than three net mineral acres. Each lease provides that if the lessee violates the most-favored-nations clause, the lessee must pay Union Pacific $5.00 per net mineral acre per day for each lease wherein Union Pacific receives a lesser bonus or royalty. Each lease further provides that if the lessee breaches any portion of the lease, Union Pacific "shall notify Lessee by certified mail of such breach, and Lessee shall have 30 days from the receipt thereof to comply with this Lease. If Lessee fails to remedy a breach within such period, Lessor may, at its option, terminate this Lease . . . ."

On July 17, 2020, Union Pacific's legal counsel sent SM Energy a letter stating that two of SM Energy's subsequent leases on neighboring lands were in violation of the most-favored-nations clause. Union Pacific further requested that SM Energy provide information on other leases that might be in violation of the most-favored-nations clause. In addition, Union Pacific requested that SM Energy pay all liquidated damages within 30 days of the letter. SM Energy failed to pay the liquidated damages within the 30-day timeframe.

On August 27, 2020, Union Pacific's legal counsel sent SM Energy another letter, by certified mail, again informing SM Energy of the alleged lease breaches. SM Energy responded to Union Pacific's letter with a list of leases that SM Energy had identified that violated the most-favored-nations clause. In its response, SM Energy also offered to pay Union Pacific $3,073,592.38. The next day, Union Pacific rejected SM Energy's offer, which excluded liquidated damages. On September 11, 2020, SM Energy sent Union Pacific a check for the same amount that it had offered in its August letter. Union Pacific again rejected SM Energy's offer and subsequently destroyed the check.

On September 29, 2020, Union Pacific informed SM Energy of its failure to cure its breach within the 30-day timeframe allotted under the lease. On October 8, 2020, SM Energy e-mailed an updated list of leases in breach of the most-favored-nations clause to Union Pacific. Additionally, SM Energy sent another check to Union Pacific—this was for $3,181,620, adding additional bonuses that were owed. Union Pacific accepted this check, but maintained that SM Energy owed it an additional $5,243,502.40 in liquidated damages.

SM Energy filed its original petition in Howard County on January 7, 2021, asserting that it is the owner of the leasehold estate and that Union Pacific had unlawfully dispossessed SM Energy of its right to possession. In response to SM Energy's petition, Union Pacific filed a motion to dismiss for improper venue. In its motion, Union Pacific asserted that Omaha, Nebraska, is the proper forum to litigate SM Energy's claim.[3] Union Pacific cited the forum-selection clause in each of the oil and gas leases as well as Section 15.020 of the Texas Civil Practice and Remedies Code in support of its motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020 (West 2017).

The trial court granted Union Pacific's motion to dismiss. Following the trial court's order, SM Energy requested that the trial court file findings of facts and conclusions of law. The trial court denied this request, and this appeal followed.

*Analysis*

In its first issue, SM Energy contends that the trial court erred in enforcing the forum-selection clause. Texas law once disfavored forum-selection clauses; however, they are now presumptively valid. *Rieder v. Woods*, 603 S.W.3d 86, 93

---

[3]On January 19, 2021, Union Pacific filed a separate lawsuit in a district court in Douglas County, Nebraska. In its Nebraska complaint, Union Pacific seeks, among other things, a declaratory judgment that SM Energy violated each lease by failing to pay the liquidated damages under the most-favored-nations clause.

(Tex. 2020) (citing *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (orig. proceeding)). Forum-selection clauses allow contracting parties to preselect their forum should a dispute arise. *Id.* (citing *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017)). Forum-selection clauses are contractually bargained for. *Sheldon*, 526 S.W.3d at 436. Therefore, forcing a party to litigate in a different forum from the one preselected, amounts to "'clear harassment' . . . injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics." *Id.* at 436–37 (alteration in original) (quoting *In re AutoNation, Inc.*, 228 S.W.3d 663, 667–68 (Tex. 2007) (orig. proceeding)).

A party seeking to avoid enforcement of a forum-selection clause must clearly show: "(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *Rieder*, 603 S.W.3d at 93 (quoting *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding)). Overcoming a forum-selection clause is a particularly heavy burden. *Id.* A trial court abuses its discretion by failing to enforce a forum-selection clause if the party seeking to avoid enforcement fails to meet this heavy burden. *In re Laibe Corp.*, 307 S.W.3d at 316 (citing *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010) (orig. proceeding)).

SM Energy asserts three arguments to support its first issue. First, it asserts that enforcing the forum-selection clause would be unreasonable and unjust because Nebraska courts lack subject-matter jurisdiction over its claims. Second, SM Energy claims that enforcing the forum-selection clause would result in piecemeal litigation. Third, SM Energy asserts that enforcing the forum-selection clause would

contravene Texas's strong public policy for adjudicating title disputes where the real property is located.

We will address SM Energy's first and third contentions together. The outcome of each contention depends on the answer to the same question: Is SM Energy's claim properly classified as a trespass-to-try-title action? SM Energy contends that it has asserted a trespass-to-try-title action that can only be litigated in Texas. "Texas courts have no subject matter jurisdiction to adjudicate title to realty, including interests in oil and gas leases, in another state or country." *Devon Energy Prod. Co., L.P. v. KCS Res., LLC*, 450 S.W.3d 203, 216 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). SM Energy is essentially asserting a corollary to this rule—a Texas court should have the exclusive subject-matter jurisdiction to adjudicate title to realty in the form of an oil and gas lease covering lands in Texas.

Conversely, Union Pacific contends that SM Energy's claim is not one to recover real property, but rather it is in the nature of a declaratory judgment. As noted in *Devon Energy*, "a Texas court with jurisdiction over the parties may enforce a party's personal or contractual obligation that indirectly involves property in another state." 450 S.W.3d at 216. Union Pacific is essentially relying on a corollary to this rule—a Nebraska court would have jurisdiction to adjudicate the parties' contractual obligations under the oil and gas leases.

Declaratory judgment actions and trespass-to-try-title actions are both statutory creatures. *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 88 (Tex. App.—Eastland 2021, no pet.) (citing *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 723–29 (Tex. App.—Eastland 2011, pet. denied)). Section 22.001 of the Texas Property Code provides: "A trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001(a) (West 2014); *see Brumley v. McDuff*, 616 S.W.3d 826, 833

6

(Tex. 2021); *Martin v. Amerman*, 133 S.W.3d 262, 264 (Tex. 2004). The prevailing party's remedy is title to, and possession of, the real property interest at issue. *Teon Mgmt.*, 357 S.W.3d at 723 (citing *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). Conversely, Section 37.004 of the Texas Civil Practice and Remedies Code provides that a person with rights under a deed, contract, or instrument "may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." CIV. PRAC. & REM. § 37.004(a) (West 2020).

A claimant may not avoid enforcement of a forum-selection clause by artfully pleading its claim. *See SH Salon L.L.C. v. Midtown Market Missouri City, TX, L.L.C.*, 632 S.W.3d 655, 660 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Sheldon*, 526 S.W.3d at 437). We look at the substance of a claimant's pleadings, rather than the form of the pleading, in order to determine whether it is a trespass-to-try-title action. *Brumley*, 616 S.W.3d at 833.

> The plaintiff in a trespass-to-try-title action is required to plead the following:
>
> (1) the real names of the parties and their residence, if known; (2) a legally sufficient description of the premises; (3) the plaintiff's claimed interest; (4) that the plaintiff possesses the premises or is entitled to possession; (5) that the defendant unlawfully entered and dispossessed the plaintiff of the premises and withholds possession; and (6) a "prayer for the relief sought."

*Id.* at 832 (citing TEX. R. CIV. P. 783 (a)–(e), (g)). The trespass-to-try-title statute will only cover a claim if the plaintiff "is seeking to establish or obtain *the claimant's* ownership or possessory right in the land at issue." *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018). "The defendant in [a trespass-to-try-title suit] shall be the person in possession if the premises are occupied, or some person claiming title thereto in case they are unoccupied." TEX. R. CIV. P. 784.

Conversely, a declaratory judgment "provides an efficient vehicle for parties to seek a declaration of rights under certain instruments." *I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 475 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (quoting *Martin*, 133 S.W.3d at 265). A claim does not have to be brought as a trespass-to-try-title action "if resolution of a dispute does not require a determination of which party owned title at a particular time . . . in other words, if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass-to-try-title action." *Id.*

A review of the substance of SM Energy's original petition reveals that it asserted a claim for a declaratory judgment to determine the obligations SM Energy owed to Union Pacific under the oil and gas leases. *See Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 371 (Tex. 2001) (addressing venue). In relevant portion, SM's petition states:

> 8. As the owner of the leasehold estate, SM Energy was in possession and is entitled to possession of its leasehold estate under the Leases.

> 9. On August 27, 2020, UPRC unlawfully dispossessed SM Energy of its rights under the Leases by ouster and/or repudiation through the continuing threat that the Leases will be terminated.

> 10. SM Energy is entitled to recover its title and undisputed possession of its leasehold estate under the Leases.

> 11. UPRC claims that the Leases may be terminated because SM Energy has not paid certain amounts under most-favored-nations clauses in the Leases. SM Energy has paid all amounts due under the Leases. Additional amounts UPRC seeks and on the basis of which it claims the right to terminate the Leases, while denominated as liquidated damages, constitute a penalty and are unenforceable.

> 12. Because the penalty that UPRC seeks is unenforceable, UPRC cannot terminate the Leases on the basis of SM Energy's failure to pay such penalty.

13. UPRC's continuing threat to terminate the Leases constitutes a cloud on SM Energy's title to and undisputed possession of the leasehold estate under the Leases.

Many of the matters pleaded by SM Energy address the elements of a trespass-to-try-title action. *See Brumley*, 616 S.W.3d at 833 (noting the elements of a properly pleaded trespass-to-try-title action). However, SM Energy's claims of dispossession, in substance, are all dependent on an initial determination that the liquidated damages provision contained in each of the three leases is unenforceable. The three oil and gas leases provide that if the lessee fails to comply with the most-favored-nations clause, then:

> Lessee shall be liable to Lessor (in addition to the larger bonus or royalty) for an amount equal to five dollars per day per net mineral acre covered by this Lease until such time as the payments are made, beginning immediately on the date Lessor becomes entitled to the greater bonus or royalty. The actual damages that Lessor would sustain are difficult to determine with certainty, and the additional payments provide a reasonable estimate of Lessor's damages and shall be considered liquidated damages and not a penalty.

Each lease also provides that "[i]n the event of Lessee's breach of this Lease," "Lessor may, at its option, terminate [these leases] and be relieved from any obligation hereunder." Union Pacific has no contractual right to terminate the leases without SM Energy having first breached the leases. According to SM Energy's original petition, it has not breached any portion of the leases because the liquidated damages clause constitutes an impermissible penalty. Thus, in order to reach the title issue as cast by SM Energy's pleadings, a court must first determine the validity of the liquidated damages provision. Therefore, we conclude that SM Energy's original petition did not allege a trespass-to-trial title action requiring that it be litigated in Texas.

9

We recently addressed the distinction between a trespass-to-try title action and a declaratory judgment action in *MEI Camp Springs, LLC v. Clear Fork, Inc.* In that case, the plaintiff "brought a declaratory judgment action against MEI seeking a determination that [plaintiff] ha[d] a valid bottom lease and that [plaintiff] ha[d] superior title to the mineral estate." *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 88 (Tex. App.—Eastland 2021, no pet.). In determining that the plaintiff should have proceeded under a trespass-to-try-title theory, we noted that the "[plaintiff] was not simply seeking to clarify its rights and interest in the bottom lease but, rather, to declare that its rights and interests were superior to that of MEI." *Id.* at 89. *MEI* is dissimilar to this case, but we find that it provides an important distinction. In *MEI*, the plaintiff contended that his title, in the form of a bottom lease, was superior to that of the defendant. *See id.* Here, the issue of dispossession is secondary to the determination of whether SM Energy breached the lease and to the validity of the liquidated damages provision.

The holding in *Hartman v. Sirgo Operating, Inc.* is instructive to our analysis. 863 S.W.2d 764 (Tex. App.—El Paso 1993, writ denied). The plaintiff sought a determination of the parties' rights and obligations under a letter agreement that concerned a waterflood unit located in New Mexico. *Id.* at 766. The court noted that "[t]he distinguishing factor" between a suit to adjudicate title to land and an "*in personam* obligation" that can be adjudicated in another state "is whether the cause before the Court involves a naked question of title." *Id.* (citing *Massie v. Watts*, 10 U.S. (6 Cranch) 148 (1810)). The court held that a Texas court had jurisdiction to consider the plaintiff's claim because it only sought to determine if obligations under a contract were valid and enforceable. *Id.* at 766–67; *see Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 721–22 (5th Cir. 2010) (relying on *Hartman*).

Similarly, in the present case, a court must determine the validity of the liquidated damages provision before the issue of title can be reached. As such, SM Energy's title is only prospectively implicated. Because SM Energy's claim only incidentally implicates title, the policy for litigating title disputes in the state where the property is located is not implicated.

SM Energy alternatively contends that its claim is a suit to remove a cloud on title. SM Energy contends that the possibility of a declaration from a Nebraska court that Union Pacific may terminate the leases constitutes a cloud on SM Energy's title. We are unpersuaded by this argument. In order to bring a suit to remove a cloud on title, the claimant must show that it has an interest in the property at issue, that title to the property is affected by a claim from the defendant, and that the defendant's claim is invalid or unenforceable. *See Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 572–73 (Tex. App.—Amarillo 2013, pet. denied). Here, SM Energy cannot show that Union Pacific's claim is currently invalid or unenforceable because before a judgment can be entered in a Nebraska court, there must first be a determination that the liquidated damages clause is enforceable. Then, the court must find in favor of Union Pacific that SM Energy violated the liquidated damages provision. Therefore, there is no claim currently casting a cloud on SM Energy's title.

Next, SM Energy contends that enforcement of the forum-selection clause would violate Texas's public policy against piecemeal litigation. SM Energy primarily relies on *Pustejovsky v. Rapid-American Corp.* to support this contention. 35 S.W.3d 643 (Tex. 2000). As stated in *Pustejovsky*:

> The single action rule, also known as the rule against splitting claims, provides a plaintiff one indivisible cause of action for all damages arising from a defendant's single breach of a legal duty. *See Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1136–37 (5th Cir. 1985). Our jurisprudence "was designed to prevent more than one

11

suit growing out of the same subject-matter of litigation; and our decisions from the first have steadily fostered this policy." *Galveston, H. & S.A. Ry. Co. v. Dowe*, 70 Tex. 5, 7 S.W. 368, 371 (1888).

*Id.* at 646–47. The single action rule is a species of res judicata that prevents claimants from asserting subsequent claims in separate actions that could have been brought in the original action. *Id.* at 647.

Here, the enforcement of the forum-selection clause would not violate Texas's public policy against piecemeal litigation from the perspective of the claimant. For all intents and purposes, the claimant in this dispute is Union Pacific because it is the party asserting that SM Energy breached the oil and gas leases. But Union Pacific is not seeking to litigate its claims under the leases in multiple suits or multiple states. Therefore, we conclude that SM Energy failed to overcome its heavy burden to invalidate the forum-selection clause, and we overrule its first issue.

In its second issue, SM Energy contends that the trial court erred by finding that Nebraska was a proper forum to litigate this dispute under Section 15.020 of the Texas Civil Practice and Remedies Code. Specifically, SM Energy asserts that the 640-acre lease does not meet the requirements of a "major transaction." Union Pacific relies on the 640-acre lease to enforce the forum-selection clause. *See* CIV. PRAC. & REM. § 15.004 (West 2017); *see also id.* § 15.020.

In relevant portion, Section 15.020 provides that "[a]n action arising from a major transaction shall be brought in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county." *Id.* § 15.020(b). A "major transaction" is defined as "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." *Id.* § 15.020(a).

This issue primarily centers around whether the 640-acre oil and gas lease evidenced consideration exceeding $1 million.  SM Energy contends that the 640-acre lease, on its face, fails to state consideration exceeding $1 million.  In relevant portion, the 640-acre lease states:

> [In regard to Minimum Royalty] Once production of oil and gas is obtained, and as long thereafter as this Lease is in force, Lessee agrees that the royalties paid to Lessor hereunder shall not be less than $1,000.00 per lease year.  If royalties on actual production for a lease year do not exceed the minimum royalty amount, Lessee shall pay to Lessor the difference between the minimum royalty amount and the amount of royalties actually paid during the preceding lease year. . . .

> [In regard to Shut in Royalties] . . . [T]his Lease shall automatically terminate unless Lessee shall pay to Lessor as royalty, a sum equal to the greater of (i) One Thousand Dollars ($1,000), or (ii) Twenty Dollars ($20.00) per gross mineral acre of the Premises for each well.

By itself, these two clauses are insufficient to qualify as a major transaction because they fail to state consideration exceeding $1 million.  *See id.* § 15.020(a).  However, the resolution of this issue depends on whether other documents related to the lease can be considered as evidence of a major transaction.

One week after the parties executed the 640-acre lease, Union Pacific provided SM Energy's predecessor-in-interest a wire transfer confirmation indicating that the original lessee paid Union Pacific a lease bonus of $2,400,000 for the 640-acre lease.  SM Energy contends that the wire transfer is irrelevant to our analysis.  In support of this contention, it cites *In re Togs Energy, Inc*.  In that case, the court considered whether a settlement and release agreement constituted a major transaction.  *In re Togs Energy, Inc.*, No. 05-09-01018-CV, 2009 WL 3260910, at *1 (Tex. App—Dallas Oct. 13, 2009, no pet.) (mem. op.).  The claimants provided an affidavit that the property in issue was worth over $1 million.  *Id.*  The Dallas Court of Appeals determined that the affidavit was irrelevant to its analysis.  *Id.*

Importantly, the affidavit did not state whether a transaction with a value over $1 million occurred. *Id.* Rather, it merely stated what the property was worth. *Id.*

SM Energy's contention that the wire transfer is irrelevant is contrary to the general rule "that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981). Here, the wire confirmation was executed one week after the 640-acre lease. While the wire transfer was not delivered on the same day that the lease was executed, other factors connect the wire transfer to the lease. The wire confirmation contains a similar property description to the one that is included in the lease. The oil and gas lease describes the property as "Section 7, Block 32 Township 1 South, T&P RR Co. Survey, A-155, Howard County, Texas." The wire transfer referenced the property as "Block 32 T1S SEC 7."

Moreover, the 640-acre lease was a "paid up" lease. "A 'paid-up' lease is one under which all delay rentals bargained for are paid in advance, and this single payment maintains the lease during the primary term." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018) (citing 1 TEXAS LAW OF OIL AND GAS § 4.3[A][3]). The delay rentals that are paid in advance under a paid-up lease are commonly referred to as a "bonus" paid on a lump sum, per-acre basis. *See* William B. Burford, 6 WEST'S TEXAS FORMS, MINERALS, OIL & GAS § 3:65 (4th ed.). As such, the bonus payment of $2,400,000 to Union Pacific for the 640-acre lease represents the consideration paid by the original lessee to Union Pacific. *See In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 658 (Tex. 2005) (with respect to Section 15.020, the "determinant amount" is the value of the consideration a person pays or is obligated to pay).

A case that informs our analysis is *Hughes v. Pearcy*, No. 03-10-00319-CV, 2014 WL 7014353, at *2 (Tex. App.—Austin Dec. 8, 2014, pet. denied) (mem. op.). In this case, the Austin Court of Appeals considered whether four separate written instruments could be considered together to meet the requirements under Section 15.020. 2014 WL 7014353, at *2. The court held that the instruments could be considered together because they were executed at the same time and one of the four instruments expressly incorporated two of the remaining three instruments. *Id.* Here, the wire transfer was near-in-time, and the references in the 640-acre lease to the fact that it was a paid-up lease implicitly incorporates the bonus payment made to Union Pacific for the lease. Accordingly, the 640-acre lease was a "major transaction" with an aggregate stated value of greater than $1 million. *See* Civ. Prac. & Rem. § 15.020(a). We overrule SM Energy's second issue.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


June 23, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.